In re Disciplinary Action David L. CURL, Respondent

INTERNATIONAL HARVESTER CREDIT CORPORATION, Plaintiff/Appellee,

v.

Johnny E. HENRY, d/b/a Jim's Pump and Drilling Company, a/k/a Bo Henry, Defendant/Appellant.

No. 85–1646.

United States Court of Appeals, Ninth Circuit.

Oct. 30, 1986.

David L. Curl, Barassi & Curl, P.C., Tucson, Ariz., for defendant/appellant.

Before NELSON, CANBY and JOHN T. NOONAN, Jr., Circuit Judges.

NOONAN, Circuit Judge.

David L. Curl is a 34 year old lawyer, a partner in a small firm in Tucson, Arizona. He has an A.B. from Illinois University and a J.D., class of 1977, from Southern Illinois University. He has served as Assistant State Attorney in Vermilion County, Illinois. He is a member of the state bars of Illinois and Arizona, the Illinois Trial Lawyers' Association, and the American Bar Association. He is on the Grievance Committee of Pima County, Arizona.

On July 22, 1986, this court issued an order to David L. Curl that he show cause why sanctions should not be imposed on him for a misrepresentation made by him as counsel for Johnny E. Henry in the case of *International Harvester Credit Corporation (Harvester) v. Henry*, decided by this court July 22, 1986. David L. Curl responded with an affidavit seeking to excuse his misrepresentation. We now impose a sanction.

*Background.* On September 8, 1980, Henry executed a contract with Wes-Tex Equipment Company for the purchase of a drilling rig and water tank truck. Wes-Tex assigned the contract to Harvester. Henry

paid $49,962.54 as a down payment and financed the remaining balance of $283,-121.09. When Henry purchased the equipment he told Wes-Tex that he needed Bills of Sale and Manufacturer's Statements of Origin to register the equipment in California. Wes-Tex supplied these documents. He made payments totaling $45,355.51 on the equipment, but in August 1981, defaulted. The next month he secreted the equipment through a sham sales transaction, and took it to Mexico. Before the Third Civil Court of Sonora, Harvester sought to foreclose upon Henry. That court, basing its decision solely on Henry's answer, which alleged he had made payment in full, decided in his favor on March 24, 1983. On appeal before the Supreme Court of Sonora, the judgment was, in the words of that court, "modified" ("se modifica"). The foreclosure action ("la via ejecutiva") was found to have failed because of Harvester's failure to tender a return of the down payments. Harvester was condemned to pay the costs of the trial. All rights of Harvester were preserved to be asserted as appropriate ("por lo que se dejan a salvo sus derechos para que los haga valer en la via y forma correspondiente").

After the decision by the lower Mexican court and before the appeal was heard, Harvester served Henry in the United States. Henry sought summary judgment asking that the lower court decision in Mexico be accorded comity. Judge Alfredo C. Marquez denied this motion on May 31, 1984. Trial was scheduled for October 10, 1984. The day before the trial David L. Curl, Henry's counsel, presented a certified copy of the decision of the Supreme Court of Sonora in Spanish. In open court, Curl told Judge Marquez that the decision "affirms the lower court's order." The trial proceeded before a jury, which gave a verdict in favor of Harvester.

On appeal, Curl contended that there should have been no trial because the lower Sonora court decision should have barred Harvester's suit. "The Appellee here brought his original action in the Mexican court system and lost," his brief asserted.

This court found that no genuine issue was presented by Henry's appeal; that

Harvester's rights had been expressly preserved by the decree of the Supreme Court of Sonora; and that Henry's appeal, based on the assertion of a Mexican judgment in his favor, had rested on a mischaracterization of the judgment. Attorney's fees and double costs were awarded Harvester against Henry. We then issued the show cause order directed to the more serious question of Curl's responsibility for the appeal.

*Curl's Response.* On August 18, 1986 Curl filed an affidavit in which he swore that, when he first received the judgment of the Supreme Court of Sonora, he "contacted his client," who told him that Raul Encinas, a Mexican lawyer from Hermosillo, had told Henry that the judgment "upheld the trial court in its entirety"; that Curl then had the judgment translated; that he then saw that it appeared that "the appeal had been dismissed without prejudice"; that Curl again contacted Henry who in turn contacted Encinas, who continued to maintain that Henry "had won the appeal in its entirety"; that after judgment against Henry in the federal district court and before taking this appeal, Curl spoke to another Mexican lawyer for Henry, Arturo Serrano of Aqua Prieta and that Curl speaking in "broken Spanish" and Serrano in "broken English," Serrano assured him that the Sonora judgment was entirely in Henry's favor, that "the bar to foreclosing on the property was bar to gaining possession of the property," and that Serrano would so testify if called as a witness. In summary, Curl swore that he and Henry were "misled by at least two Mexican attorneys."

Curl further pointed out that he had submitted the Sonoran judgment in Spanish and an accurate English translation of it to this court, leaving this court "free to decide what the interpretation of the Mexican Judgment" was. He added that it was his "duty to his client to represent him, within the bounds of ethics, and to take a position which may be sustained by evidence."

*Discussion.* A lawyer's duty to an appellate court consists in more than not

putting false evidence before the court. Curl complied with the elementary obligation of not falsifying the record by providing the Sonoran judgment in Spanish with an accurate English translation. But Curl's obligations were greater. He had a duty not to misrepresent the evidence in argument before the court.

Curl in his brief for Henry stated that "the Mexican judgment had been rendered in favor of Defendant-Appellant Johnny Bo Henry in the appropriate amount of $370,-000." Appellant's Brief, p. 5. Curl noted that the judgment had then been taken to a higher Mexican court. His appeal to our court was from the district court's failure "to recognize the Mexican judgments." Appellant's Brief, p. 2.

In his "Statement of Facts and Issues," Curl cited the words of the lower Mexican court that Henry had "payed the price of the transaction." He then stated that the Supreme Court of Sonora had "affirmed the lower court." Appellant's Brief, p. 4. In his "Summary of Argument," Curl began: "Since International Harvester voluntarily brought its action before the Mexican court system and lost, the doctrines of comity, collateral estoppel and *res judicata* should bar an attempt to relitigate the matter in the U.S. court system." Appellant's Brief, p. 5. The rest of the brief was a development of this position which rested squarely on the bar created by the judgment of the Supreme Court of Sonora.

Curl reiterated his basic position that "the Mexican Court" had "entered its finding that the Defendant had paid for the property and absolved Defendant of the claims of Plaintiff." Appellant's Brief, p. 8. This judgment, Curl reported, "had been made final by a decision of the Third Section of the Supreme Tribunal of Justice of Hermosillo (akin to state supreme court)." Appellant's Brief, p. 10. "As a result," he continued, "the Mexican proceedings are conclusive—Plaintiff was barred by the doctrine of *res judicata* from relitigating his claim here." *Id.* His 26 page brief presented variations on this theme. At no point did Curl in any fashion indicate that there was ambiguity or uncertainty in his reading of the judgment of the Supreme Court of Sonora. His assertions were completely affirmative and unqualified. Harvester, he maintained, was absolutely barred by the Mexican judgment against it. At oral argument, Curl took the same line.

If by some piece of legal ingenuity or quirk of Mexican law, the Sonoran judgment could have been construed as a judgment on the merits, it was Curl's duty to explain the inference by which one could reach this conclusion:

> [A lawyer] may assert any inferences from the facts of the case that seem to him arguable, but he cannot present his inferences from the facts as if they were the very facts themselves. When he is indulging, as he has every right to do, in inferences or reasoning from the facts, he must say so—there are many words in the English language fitted to express this process of inference—and to be effective he should state the facts in the record from which he is making his inferences. A fortiori, if, as here, there are no facts on which to predicate a statement or from which he may reason or argue, he makes such false statement of facts or false inferences from such non-existing facts at his peril. The failure of his adversary to discover his mistake here or below is no excuse for what may turn out to be an imposition on the court, even if it can be attributed merely to carelessness and lack of thoroughness in the preparation of the appeal. *In re Greenberg*, 15 N.J. 132, 104 A.2d 46 (1954) (per Vanderbilt, C.J.).

When Curl chose to state as a fact what was at the best a guess and a hope, he engaged in misrepresentation.

Curl misrepresented the judgment on which his appeal depended. If we accept his affidavit, he did so in part because of statements made to him by his client, Henry. Curl had no reason to believe Henry, an oil driller, on a matter of law. Henry's basic story, that he had paid Harvester, was disbelieved by the jury in this case, and was wholly implausible. At oral argument Curl acknowledged that Henry's story was "wild." We do not address here the

duty of a lawyer never to put on the witness stand a client he has reason to know is committing perjury. *See Nix v. Whiteside,* — U.S. —, 106 S.Ct. 988, 995, 89 L.Ed.2d 123 (1986). But the implausibility of Henry's story bears on the reasonableness of Curl relying on him. No reasonable lawyer would have taken Henry's word for what another lawyer said was the meaning of a foreign judgment.

Curl's other reliance was on a lawyer with whom he conversed with difficulty because neither could speak the other's language fluently. On a matter of central importance to his case it was reckless for Curl to depend on his understanding of the broken English of Serrano responding to questions framed by him in broken Spanish. Ordinary prudence required Curl to get a written opinion of the meaning of the judgment, especially so when his own reading of it, like ours, showed him that the judgment was procedural only. Recklessly, Curl chose to hear what he wanted to hear and charged ahead.

Curl's excuses do not relieve him of responsibility for having brought an appeal that should never have been brought, for subjecting Harvester to the burden of appellate litigation, and for having put this court to the task of reading, analyzing, and judging his baseless arguments. Curl's conduct has been professionally irresponsible in violation of the standards of legal ethics and his duty to this court. Sanctions are appropriate and indeed required.

By Rule 5 of the Rules of this court, the Federal Rules of Civil Procedure, "whenever relevant" are part of the rules of this court. Rule 11, Fed.R.Civ.P. prescribes that "the signature of an attorney" constitutes "a certificate by him" that to the "best of his knowledge, information, and belief formed after reasonable inquiry," the paper he is filing with the court is "well grounded in fact." The brief filed by Curl was not well-grounded in fact and he had not made reasonable inquiry. Rule 11 prescribes that in such a situation the court "shall impose" "an appropriate sanction" upon the attorney. The imposition of sanctions is mandatory. *Golden Eagle*

*Distributing Corp. v. Burroughs Corp.,* 801 F.2d 1531 (9th Cir.1986); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 at 254 n. 7.

A majority of this court believes the public admonishment of this opinion is sufficient sanction. The majority is willing to believe that Curl did not intentionally attempt to perpetrate a fraud on this court. There is no evidence that Curl has been subject to prior disciplinary proceedings. The court will not hesitate to sanction future negligence with substantial monetary fines, suspension, or disbarment from practice before our court.

---

**Editor's Note:** The opinion of the United States Court of Appeals, Ninth Circuit, in *Miller v. Hedlund,* published in the advance sheet at this citation, 803 F.2d 1007–1015, was withdrawn from bound volume pending resolution by the United States Supreme Court of *324 Liquor Corp. v. Duffy.*