IN THE MATTER OF LOUIS J. GREENBERG, AN ATTORNEY AND COUNSELLOR AT LAW.

Argued March 15, 1954—Decided April 5, 1954.

*Mr. George Warren,* by direction of the court, argued the order to show cause.

*Mr. Louis J. Greenberg,* appearing *pro se* in opposition to the order to show cause.

The opinion of the court was delivered by

VANDERBILT, C. J.   The respondent in his brief and in his oral argument in *Shellhammer v. Lehigh Valley Railroad Company,* 14 *N. J.* 341 (1954) contended that:

"it is shown by 'uncontradicted evidence' that 'an interval of 15 to 20 minutes had elapsed between the all-clear signal, followed by the

air-brake test, which took thirty seconds, and the actual starting of the train by Hann, the defendant's engineer;' that 'no one was assigned to check up and take any steps to ascertain if a change of status had occurred during that 15 to 20 minute interval during which no check-up or investigation had been made to prove it was safe to start the train,' 'as to whether or not the decedent or any one else was working at or about the train or between the cars,' and the 'engineer started the train relying solely on an all-clear signal which had been given to him 15 to 20 minutes earlier.' "

In dealing with this question which is the crucial, indeed, the only issue in the case, Mr. Justice Heher speaking for the court held:

"The Court's preargument examination of the record revealed no ground whatever for the statement that between 15 to 20 minutes intervened between the giving of the all-clear signal and the movement of the train; and on the oral argument, when counsel was asked to point out the evidential justification for this factual assertion, he was unable to do so and then agreed that it had no basis in the record. In ostensible support of this affirmation of fact, the brief cites evidence tending to show that there was an interval of 15 minutes between 'the time of the last coupling' of cars 'until the time the train moved out of the yard, started to move,' a radically different thing. Thus, the basic factor in the charge of negligence made on the brief is not sustained by the proofs. The train went into timely motion in accordance with the only signal given; there was no interval calling for a renewal of the signal before the train was actually put into operation. A finding of culpable negligence in these circumstances would be purely conjectural and utterly devoid of the factual substance requisite for liability under the statute."

The court thereupon issued an order calling on the respondent to show cause

"why he should not be disciplined for a misrepresentation of fact in the presentation of the cause of his client, censurable as in disregard of his professional duty to his client and to the Court."

On the return of the order to show cause it appeared that the respondent had nothing to do with the earlier stages of the case beyond introducing New York counsel to the court. Specifically it appeared that he did not prepare the briefs or argue the cause in the Appellate Division of the Superior Court, both of these matters being attended to by New York counsel.

The respondent was delegated by the law office with which he was then associated to prepare a petition for certification and, after certification was granted, to draft the brief and argue the appeal here. The respondent frankly concedes that he did not examine the transcript of the trial or the appendix used in the Appellate Division, but merely condensed the statement of facts in the brief used there. Nor did he check the cases in the brief in the Appellate Division which he adopted for use here. He says that it was not until two of the justices queried him at the oral argument as to the foundation in fact in the record for the basic position asserted by him that he realized that his position was untenable. On returning to his office he examined the transcript and became convinced of his error.

In extenuation the respondent pleads that the error was not discovered by his adversary either in the Appellate Division of the Superior Court, in the proceedings in this court for certification, or in the briefs or on the oral argument here. We are convinced of the good faith of the respondent and of the entire lack of any intention on his part to deceive the court. Yet it is so obvious as not to require the citation of authorities that the work of our appellate courts cannot go on satisfactorily if we cannot rely on the representations of counsel to us both as to the facts and as to the law. It is because of the necessity of such reliance that in this State only counsellors-at-law are allowed to submit briefs and argue appeals in our appellate courts.

This fundamental responsibility of our appellate bar is not to be construed as in any way curtailing the legitimate argument of counsel. He may assert any inferences from the facts of the case that seem to him arguable, but he cannot present his inferences from the facts as if they were the very facts themselves. When he is indulging, as he has every right to do, in inferences or reasoning from the facts, he must say so—there are many words in the English language fitted to express this process of inference—and to be effective he should state the facts in the record from which he is making his inferences. *A fortiori*, if, as here, there are

no facts on which to predicate a statement or from which he may reason or argue, he makes such false statement of facts or false inferences from such non-existing facts at his peril. The failure of his adversary to discover his mistake here or below is no excuse for what may turn out to be an imposition on the court, even if it can be attributed merely to carelessness and lack of thoroughness in the preparation of the appeal. The facts of a case are or should be peculiarly within the knowledge of the counsel who are arguing the appeal and there is great likelihood of error by the court and of consequent injustice to the parties, if counsel do not adequately present the true facts of the case.

█ Similarly, if counsel is responsible, as he is under the Canons of Professional Ethics, for making known to the court any decisions in the State adverse to his cause in the event his opponent fails to cite them, it necessarily follows that he is even more responsible for citing authorities which cannot conceivably be taken to stand for the proposition for which he cites them, although as in the matter of presenting facts he is permitted to argue freely every inference that can be legitimately drawn from the cases he cites provided he does not misrepresent to the court the contents of such cases.

The opinions of the American Bar Association Committee on Professional Ethics and Grievances on the question of a lawyer's duty to disclose adverse decisions are not without significance to our present discussion. In answering the question

"Is it the duty of a lawyer appearing in a pending case to advise the court of decisions adverse to his client's contentions that are known to him and unknown to his adversary?

the Committee on July 17, 1935 gave its Opinion 146:

"A lawyer is an officer of the court. His obligation to the public is no less significant than his obligation to his client. His oath binds him to the highest fidelity to the court as well as to his client. It is his duty to aid the court in the due administration of justice.

'The conduct of the lawyer before the Court and with other lawyers should be characterized by candor and fairness.' Canon 22.

We are of the opinion that this Canon requires the lawyer to disclose such decisions to the court. He may, of course, after doing so, challenge the soundness of the decisions or present reasons which he believes would warrant the court in not following them in the pending case."

This opinion has been criticized as too broad in an article by Robert B. Tunstall of the Virginia bar, who advocates that the rule be limited to "controlling authorities," 35 *A. B. A. J.* 5 (January, 1949), which in effect would mean that it would not be mandatory to cite decisions that the court was not required to follow.

■ Thereafter, on June 18, 1949, Opinion 280 was handed down by the Committee, which states in part:

"We would not confine the Opinion to 'controlling authorities,'— *i. e.*, those decisive of the pending case,—but, in accordance with the tests hereafter suggested, would apply it to a decision directly adverse to any proposition of law on which the lawyer expressly relies, which would reasonably be considered important by the judge sitting on the case. * * *

In a case involving a right angle collision or a vested or contingent remainder, there would seem to be no necessity whatever of citing even all the relevant decisions in the jurisdiction, much less those from other states or by inferior courts. Where the question is a new or novel one, such as the constitutionality or construction of a statute, on which there is a dearth of authority, the lawyer's duty may be broader. The test in every case should be: Is the decision which opposing counsel has overlooked one which the court should clearly consider in deciding the case? Would a reasonable judge properly feel that a lawyer who advanced, as the law, a proposition adverse to the undisclosed decision, was lacking in candor and fairness to him? Might the judge consider himself misled by an implied representation that the lawyer knew of no adverse authority."

We adopt the view expressed in Opinion 280, limiting it, however, to decisions of the courts of this State and, with respect to federal questions, to decisions of the courts of the United States.

There is, of course, no charge here of misquoting or of suppressing decisions. That question is presented simply because it is an integral part of any discussion of the fundamental relations of appellate counsel and the court. The process of deciding cases on appeal involves the joint efforts

of counsel and the court. It is only when each branch of the profession performs its function properly that justice can be administered to the satisfaction of both the litigants and society and a body of decisions developed that will be a credit to the bar, the courts and the state.

The underlying philosophy of this phase of the relations between court and counsel has been aptly summarized by a leading authority on legal ethics:

> "The extent to which it is regarded as counsel's duty to advise the court as to matters relevant to the proper decision of the case of which opposing counsel is ignorant or which ·he has overlooked turns on the degree to which the old idea that litigation is a game between the lawyers has been supplanted by the more modern view that the lawyer is a minister of justice. Always, however, must be borne in mind the principle that the theory of our system is still that justice is best accomplished by having all the facts and arguments on each side investigated and presented with maximum vigor by opposing counsel, for decision by the court and jury." *Drinker, Legal Ethics* (1953), *p.* 76.

■ These problems have never, to our knowledge, come before our courts in a disciplinary matter, but they are of transcendent importance in the administration of justice. In view of our findings with reference to the good faith of the respondent, it would be manifestly unfair to impose discipline on him. Nevertheless, the case should serve as a warning to all that the bar is expected to live up in full measure to its professional obligations in the delicate and difficult process of molding the law of the state insofar as it is embodied in the decisions of the appellate courts to the needs of the time. It necessarily follows that any future transgressions in this field must meet with severe disciplinary action, if the courts and the bar alike are to perform their duties to litigants and the public.

■ And it may not be amiss in view of what happened in the courts below in the *Shellhammer* case to remind the bar that vouching for out-of-state attorneys in order to enable them to appear *pro hac vice* in our courts is not a mere formality, but entails responsibility for the good conduct of

such attorneys according to *our* standards of professional conduct.

The order to show cause is discharged but without costs.

*For discharge of order*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.