David A. TYLER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7779.

Court of Appeals of Alaska.

Sept. 14, 2001.

Rehearing Denied Nov. 2, 2001.

**1097**

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

On May 18, 2001, this court ordered attorney Eugene B. Cyrus to show cause why sanctions should not be imposed on him under Appellate Rule 510(c) for his conduct in this appeal. Having considered Mr. Cyrus's response, we conclude that Mr. Cyrus should be fined under Appellate Rule 510(c). In his opening brief, Mr. Cyrus misstated the facts of the case in a way that masked this court's potential lack of jurisdiction to entertain the appeal. Then, after the true facts were revealed and the jurisdictional problem became known, Mr. Cyrus knowingly failed to cite a decision of the Alaska Supreme Court that was directly adverse to his contention that this court had jurisdiction to decide the appeal.

*Procedural history of Tyler v. State*

To explain our decision, we need to describe the procedural history of the underlying appeal: *Tyler v. State,* File No. A–7779.

David A. Tyler was convicted of felony DWI—driving while intoxicated after having been twice previously convicted of DWI within the preceding five years.[1] Tyler, represented by Mr. Cyrus, appealed his conviction to this court.

In his brief to this court, Mr. Cyrus conceded that Tyler was guilty of driving while intoxicated on the date alleged in the indictment, but he asserted that Tyler's two prior DWI convictions were invalid because, in both prior cases, Tyler had not knowingly waived his right to counsel before he pleaded no contest to the charges. Mr. Cyrus therefore argued that Tyler's prior convictions should be set aside and that Tyler's current DWI offense should be reduced to a misdemeanor.

Mr. Cyrus stated in his brief that Tyler was entitled to litigate this issue because he had gone to trial and had been convicted. But when the State's attorney reviewed the

Eugene B. Cyrus, Eagle River, for Appellant.

Douglas H. Kossler, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

1. AS 28.35.030(n).

record in preparation for writing the appellee's brief, he discovered that Tyler had not gone to trial. Rather, Tyler had been convicted of felony DWI after convincing the superior court to let him enter a *Cooksey* plea over the objection of the prosecutor. Under the terms of this *Cooksey* plea, Tyler purportedly reserved the right to litigate the validity of his pleas to the two prior DWI charges.[2]

Based on this discovery, the State moved to dismiss Tyler's appeal. The State argued that Tyler's *Cooksey* plea was invalid because the issue that Tyler had preserved for appeal—the validity of his two prior DWI pleas—was not dispositive of Tyler's case.

The State pointed out that even if we ultimately concluded that Tyler had not knowingly waived his right to counsel before he pleaded no contest to the two prior charges, this would not mean that Tyler was entitled to an acquittal of the prior charges. Rather, Tyler would be entitled to withdraw his no contest pleas—but the charges would still stand, and Tyler would face trial on those charges. The State argued that if Tyler was again convicted of these charges (either following trial or after entering counseled pleas of no contest), then Tyler would still be a third offender for purposes of his current offense, and thus Tyler's felony DWI conviction would remain valid.

In his response, Mr. Cyrus conceded that he had incorrectly stated the facts in his brief: Tyler had not gone to trial, but rather had entered a *Cooksey* plea. Mr. Cyrus further conceded that Tyler's *Cooksey* plea would be invalid *if* the State's legal argument was correct—*i.e.*, if the State was correct in arguing that Tyler would remain a third offender if he was ultimately re-convicted on the two prior DWI charges. But Mr. Cyrus contended "that the present state of the law does not permit such a relation back." He argued that even if Tyler was again convicted of the two prior DWIs, those convictions

would be new—that is, they would no longer be "prior" to his current DWI conviction, and thus Tyler's current offense would be a misdemeanor, not a felony:

> [I]f there [sh]ould be ... new conviction[s] ... on the [two prior] misdemeanor DWI cases, [these convictions] would be after the offense date in the instant case ..., and thus, [Tyler's] priors would not [support] enhanced punishment [for his current offense].

In support of his argument, Mr. Cyrus cited three prior decisions of the Alaska Supreme Court: *State, Dept. of Public Safety, Division of Motor Vehicles v. Fann*[3] (holding that the superior court is empowered to investigate the underlying validity of a prior DWI conviction that is being used as the basis for enhancing a period of license revocation); *Wik v. Department of Public Safety*[4] (holding that, for purposes of determining whether a DWI defendant is subject to an enhanced sentence or an enhanced period of license revocation, the number of a defendant's prior convictions should be assessed as of the date of the defendant's latest *arrest*, not the date of the defendant's latest conviction); and *Tulowetzke v. Department of Public Safety*[5] (holding that, for purposes of determining whether a DWI defendant is subject to an enhanced sentence or an enhanced period of license revocation, prior convictions arising from separate incidents must be counted as separate convictions, even though the trial court may have entered these convictions at the same time).

But the supreme court's holdings in these three cases are, at best, tangentially related to the proposition of law advanced by Mr. Cyrus. None of these cases addresses the particular question posed by Tyler's appeal: Would Tyler remain a third offender for purposes of the felony DWI statute if he were allowed to withdraw his pleas in his two

---

**2.** *See Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974). In *Cooksey,* the Alaska Supreme Court established a procedure whereby a defendant could, with the consent of the government and the court, plead no contest and still preserve an issue for appeal, so long as the issue was dispositive of the defendant's case.

**3.** 864 P.2d 533, 537 (Alaska 1993).

**4.** 786 P.2d 384, 387 (Alaska 1990).

**5.** 743 P.2d 368, 371 (Alaska 1987).

prior DWI cases, but then were re-convicted of these same offenses?

Although the three cases cited by Mr. Cyrus do not involve or address this legal issue, the Alaska Supreme Court has in fact addressed this very issue in a slightly different setting. The case is *McGhee v. State*, 951 P.2d 1215 (Alaska 1998).

In *McGhee*, the Division of Motor Vehicles revoked McGhee's driver's license after he was arrested for DWI.[6] McGhee's period of revocation was increased because he had two prior DWI convictions.[7]

After his license was revoked, McGhee filed a motion in district court attacking one of his prior DWI convictions. McGhee argued that he should be allowed to withdraw his plea because the judge failed to expressly advise him of his right to a jury trial. McGhee was successful; the court allowed him to withdraw his plea. But after obtaining this favorable ruling, McGhee immediately re-entered a no contest plea, and he was again convicted of the charge.[8]

Following this series of events, McGhee returned to the Division of Motor Vehicles and challenged the length of his license revocation. McGhee argued that he should no longer be subjected to the same enhanced revocation period because, now, one of his prior convictions was no longer "prior". McGhee contended that even though he had been re-convicted of the same DWI offense, his conviction should be considered "new" because it was entered *after* his current DWI arrest. Thus, McGhee argued, his re-conviction of the old DWI offense could not be used to trigger the enhanced suspension period.[9]

But the supreme court rejected this argument. The court declared: "Because McGhee remains convicted of the same DWIs that subjected him to an enhanced revocation [in the first place], the temporary set-aside of the prior DWI requires no alteration of the original [license] revocation." [10]

Neither Mr. Cyrus nor the State's attorney cited *McGhee* in their pleadings. We found the case ourselves. And, having found it, we concluded that it provided the answer to Tyler's appeal.

Based on *McGhee*, we concluded that even if Tyler were allowed to withdraw his pleas to the two prior offenses, this would not necessarily mean that he should be acquitted of felony DWI in his current case. Rather, if Tyler were later re-convicted of the two prior offenses, he would continue to be a third offender (*i.e.*, a felony DWI offender) for purposes of his current case. We therefore agreed with the State that the issue Tyler preserved for appeal (the validity of his pleas to the two prior DWI charges) was not dispositive of his case, and that Tyler's *Cooksey* plea was therefore not valid. Accordingly, we dismissed Tyler's appeal.[11]

*Mr. Cyrus's misstatement of the procedural posture of Tyler's appeal: his statement that Tyler had gone to trial when, in fact, Tyler had entered a Cooksey plea*

As explained above, Mr. Cyrus's opening brief in Tyler's appeal contained a misstatement concerning the procedural posture of Tyler's case. Mr. Cyrus declared that Tyler had been convicted following a trial. Mr. Cyrus told this court that Tyler had agreed to be tried on stipulated facts (*i.e.*, Tyler stipulated that he was guilty of driving while intoxicated in the present case) so that Tyler would be able to pursue an appellate attack on his two prior convictions.[12]

Mr. Cyrus now concedes that this statement was false. He admits that Tyler was

---

6. McGhee took and failed a breath test. *See id.* at 1217; AS 28.15.165.

7. *See* AS 28.15.165(d), which incorporates the escalating suspension periods set forth in AS 28.15.181(c).

8. *See McGhee*, 951 P.2d at 1217.

9. *See id.* at 1218.

10. *Id.* at 1217.

11. *See Tyler v. State*, 24 P.3d 1260 (Alaska App. 2001).

12. Tyler's opening brief states: "At a court trial, Tyler admitted to driving while intoxicated and being intoxicated at the time of driving. The sole issue was the validity of [Tyler's] prior misdemeanor convictions." Opening Brief of Appellant, File No. A–7779, page 3.

convicted based on a *Cooksey* plea of no contest, after Mr. Cyrus convinced the superior court to accept this plea over the objection of the prosecuting attorney.

In his response to our order to show cause, Mr. Cyrus contends that he simply made a mistake. He asserts that he has represented several clients who all raised similar defenses to felony DWI charges (defenses based on defects in the defendants' prior convictions). Mr. Cyrus further asserts that many of these other clients consented to a "walk-through" trial (*i.e.*, a trial on stipulated facts). Mr. Cyrus contends that he confused Tyler's case with these others, forgetting that Tyler's case had been resolved by a *Cooksey* plea rather than a trial on stipulated facts.

As we have explained, the distinction between "conviction following a trial" and "conviction based on a *Cooksey* plea" was crucial to the proper resolution of Tyler's appeal. If Tyler had gone to trial, he would have been entitled to demand that we resolve the merits of his appeal. But because Tyler did not go to trial and instead entered a *Cooksey* plea, Tyler could not ask us to assess the validity of his pleas to the prior DWI charges until he first convinced us that his *Cooksey* plea was valid. For unless a *Cooksey* plea is valid, we have no jurisdiction to entertain the appeal.[13]

To demonstrate the validity of his *Cooksey* plea, Tyler had to demonstrate that the issue preserved for appeal was "dispositive"—*i.e.*, that a successful attack on his pleas to the prior DWI charges would conclusively resolve whether he was guilty of felony DWI in the current case. We ultimately concluded that the validity of Tyler's prior convictions was not a dispositive issue. Accordingly, we ruled that Tyler's *Cooksey* plea was invalid and that Tyler had no right to pursue his appeal.

Thus, when Mr. Cyrus falsely told this court that Tyler had gone to trial, this misstatement of fact effectively concealed a flaw—ultimately, a fatal flaw—in Tyler's case: our lack of jurisdiction to entertain his appeal. If the State's appellate attorney had not read the record carefully and discovered the existence of the *Cooksey* plea, Tyler might have obtained something that he did not legally deserve.

Mr. Cyrus asserts that his misstatement of fact was innocent rather than intentional. For present purposes, we assume this to be true. But even assuming that Mr. Cyrus acted in good faith, it is obvious that he failed to review the record of the superior court proceedings when he prepared Tyler's brief.

In his response to our order to show cause, Mr. Cyrus asserts that he did not remember that Tyler had entered a *Cooksey* plea over the objection of the prosecutor; rather, he mistakenly thought that Tyler had gone to trial on stipulated facts. Mr. Cyrus explains that his faulty memory remained uncorrected because he "did not have a copy of the [in-court clerk's] log notes when [he] wrote ... the appeal brief". From Mr. Cyrus's explanation, we infer another fact: Mr. Cyrus did not have the audio tapes of the superior court proceedings—or, if he did, he did not listen to them or have them transcribed.

Alaska Civil Rule 11 (which, by virtue of Alaska Criminal Rule 50(b), also governs criminal litigation) declares that an attorney's signature on a document filed with a court constitutes the attorney's certificate that the assertions of fact contained in the document are well-grounded "to the best of the signer's knowledge, information, and belief *formed after reasonable inquiry*". (Emphasis added) The phrase "formed after reasonable inquiry" implies that an attorney's good faith is not enough to satisfy Rule 11. It implies that an attorney has an obligation to make objectively reasonable efforts to ascertain the facts of the case before making assertions of fact in court documents.

This is, indeed, how the Alaska Supreme Court has interpreted Rule 11. In *Keen v. Ruddy*, 784 P.2d 653 (Alaska 1989), the court declared that the rule "creates an objective standard of 'reasonableness under the circumstances,' and is intended to be more stringent than a mere 'good faith' formula."[14]

---

13. See *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n. 4 (Alaska 1978).

14. *Id.* at 658. *See also Cooter & Gell v. Hartmarx Corporation*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), in which the United States

A similar duty of reasonable inquiry is described in the Comment to Alaska Professional Conduct Rule 3.3:

[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true *on the basis of a reasonably diligent inquiry*.

*Id.*, "Representations by a Lawyer" (emphasis added).

■ In the present case, Mr. Cyrus made a false assertion concerning a fact that directly affected Tyler's legal right to pursue the appeal and this court's authority to entertain the appeal. Before writing Tyler's brief, Mr. Cyrus was obligated to make a reasonable effort to ascertain the facts of the case—particularly, the facts that provided the legal basis for Tyler's invoking this court's jurisdiction. We assume that Mr. Cyrus never subjectively intended to mislead this court about whether Tyler went to trial as opposed to entering a contested *Cooksey* plea. Nevertheless, Mr. Cyrus neglected to review the pertinent superior court proceedings before making his false assertion of fact.

■ Normally, the requirements of Appellate Rule 212(c)(1)[g] will forestall an attorney from relying solely on their personal memory of events when writing an appellate brief. Under Rule 212(c)(1)[g], an attorney's brief must recite "the facts relevant to the issues presented for review", and these assertions of fact must be accompanied by "appropriate references to the record" in the format specified by Appellate Rule 212(c)(8). This requirement serves two purposes: it allows the appellate court and opposing counsel to verify the attorney's assertions of fact (by locating the portions of the lower court record that the attorney is describing), and it protects the court and opposing counsel from unfounded assertions of fact.

Both this court and the Alaska Supreme Court review newly-filed briefs for compli-

ance with the various requirements of Appellate Rule 212. Thus, for example, if an attorney tried to brief an evidence issue or a jury instruction issue from memory, without including citations to the record, the brief might well be rejected for filing.

But there is seldom a dispute concerning the facts that support a criminal defendant's invocation of this court's jurisdiction. Because of this, we generally do not subject a defendant's jurisdictional statement to the same scrutiny as other portions of the brief. For instance, we accepted Mr. Cyrus's opening brief in Tyler's appeal even though he included no citation to the record when he asserted that Tyler had been convicted following a court trial.

Nevertheless, as Tyler's case illustrates, the facts supporting an appellant's claim of jurisdiction—*i.e.*, the facts that demonstrate the appellant's legal right to pursue the appeal—are just as important as the facts supporting the appellant's claims of error. An appellate attorney must make a reasonable effort to verify those facts before writing the brief. We conclude that Mr. Cyrus violated this duty.

*Mr. Cyrus's failure to cite McGhee v. State, legal authority that was directly adverse to the proposition of law he was advancing*

Once the State discovered that Tyler had entered a *Cooksey* plea instead of going to trial, the State moved to dismiss Tyler's appeal. The State argued that Tyler's *Cooksey* plea was invalid because the issue that Tyler had preserved for appeal—the validity of his pleas to the two prior DWI charges—was not dispositive of Tyler's case.

As we explained above, the State's motion to dismiss Tyler's appeal presented the following legal issue: If Tyler were allowed to withdraw his no contest pleas to the two prior DWI charges, but if the State then succeeded in re-convicting Tyler of these same charges, would those two DWI convic-

---

Supreme Court endorsed the same interpretation of Federal Civil Rule 11. The court stated:

The central purpose of Rule 11 is to deter baseless filings in district court[.] Rule 11 imposes a duty on attorneys to certify that they

have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact [and] legally tenable[.]

*Id.*, 496 U.S. at 393, 110 S.Ct. at 2454.

tions still be "prior convictions", so that Tyler could properly be charged with felony DWI in the current case? Or would the re-convictions be "new" convictions, so that Tyler would technically be a "first offender" for purposes of his current case (and thus guilty of only misdemeanor DWI)?

The State argued that if Tyler was convicted again of the two earlier charges (either following trial or after entering counseled pleas of no contest), Tyler would continue to be a third offender for purposes of his current offense, and therefore his current felony DWI conviction would remain valid. Mr. Cyrus argued the opposite. He contended that even if Tyler was re-convicted of the two previous DWIs, those convictions would be new—that is, they would no longer be "prior" to Tyler's current DWI offense. According to Mr. Cyrus's argument, even if the State re-convicted Tyler of the two earlier DWIs, Tyler would still be a "first offender" for purposes of his current offense, and thus his current offense would be a misdemeanor, not a felony.

When the parties submitted their pleadings on this issue, neither Mr. Cyrus nor the State's attorney alerted us to *McGhee v. State*, the Alaska Supreme Court decision that addresses this re-conviction issue in the context of an administrative revocation of a driver's license for a third-offense DWI. The State's attorney apparently did not find the *McGhee* case when he researched the State's motion to dismiss Tyler's appeal-for if the State's attorney had found *McGhee*, he doubtless would have cited it. But Mr. Cyrus plainly knew of the supreme court's decision in *McGhee*: he was the attorney who represented McGhee in the supreme court.[15]

Alaska Professional Conduct Rule 3.3(a)(3) declares that a lawyer shall not knowingly "fail to disclose ... legal authority in the controlling jurisdiction" if the lawyer knows that this legal authority is "directly adverse to the position of the [lawyer's] client" and if this authority has "not [been] disclosed by opposing counsel". *McGhee* was decided by our supreme court, so it is "legal authority in the controlling jurisdiction". Mr. Cyrus knew about the *McGhee* decision, and he

knew that the State's attorney had not brought *McGhee* to our attention. The remaining question is whether Mr. Cyrus knew that *McGhee* was "directly adverse" to his legal position—directly adverse to his contention that Tyler would have to be treated as a "first offender" even if he was re-convicted of the two prior DWIs.

Our decision in *Tyler v. State*—i.e., our dismissal of Tyler's appeal—is clearly premised on our conclusion that *McGhee* is, in fact, directly adverse to Mr. Cyrus's legal position. However, it would be unfair to judge Mr. Cyrus's ethical duties in hindsight. Obviously, Mr. Cyrus had not read our decision when he wrote his brief. The question is whether, at the time Mr. Cyrus wrote his brief, he knew that *McGhee* was directly adverse to his position.

### (a) Mr. Cyrus's response to our order to show cause

 In his response to our order to show cause, Mr. Cyrus asserts that he did not tell us about the *McGhee* decision because he believed that *McGhee* did not control the outcome of Tyler's case. Mr. Cyrus contends that "*McGhee* is unique because of its fact pattern" and, because of this, he did not believe (and still does not believe) that *McGhee* was "controlling authority" in Tyler's case. To back up his argument, Mr. Cyrus points out that at least one superior court judge shared his views concerning *McGhee*:

> [J]ust four months previous to my writing [Tyler's] brief ..., a detached neutral judicial officer of the Anchorage Superior Court in a litigated case *of mine* ... ruled that *McGhee* was not controlling authority on a similar issue regarding the propriety of an attack on a prior conviction....

> [I]f an attorney [knows of] a written judicial opinion verifying his belief that a case is not applicable, ... it is not possible to [condemn the] attorney [for] intentionally withholding controlling authority. Simply [put], if attorneys could disagree as to [whether a case is] controlling authority,

---

**15.** *See McGhee,* 951 P.2d at 1217.

there should not be a violation [of Professional Conduct Rule 3.3(a)(3) ].

"Response to Order to Show Cause" dated June 18, 2001 (File No. A–7779), pages 5–6 (emphasis in the original).

The superior court case that Mr. Cyrus refers to is *Sjoblom v. State,* File No. 3AN–00–8344 Civ. Susan Sjoblom was Mr. Cyrus's client. After Sjoblom was convicted of felony DWI (*i.e.,* third-offense DWI), Mr. Cyrus filed a motion in district court on her behalf, seeking to set aside one of her prior misdemeanor DWI convictions. Mr. Cyrus claimed that Sjoblom had received ineffective assistance of counsel in that prior case. Ultimately, Mr. Cyrus negotiated a deal with the Municipality of Anchorage that embodied the same strategy he pursued in *McGhee:* the Municipality agreed to concede the ineffective assistance of counsel issue (so that Sjoblom's prior conviction would be set aside), and Sjoblom agreed to immediately plead no contest to that same charge (so that she would again be convicted of the prior DWI).

Having accomplished this, Mr. Cyrus returned to superior court (the court having jurisdiction over Sjoblom's felony DWI conviction) and asked the court to reduce her felony conviction to a misdemeanor. His argument was the same one he presented in *McGhee:* Mr. Cyrus argued that Sjoblom should no longer be considered a third offender because, now, one of her prior DWI convictions was no longer "prior". That is, even though Sjoblom had been re-convicted of the same DWI offense, her conviction should be considered "new" because it was entered *after* her arrest in the felony case.

Mr. Cyrus did not tell the superior court about the *McGhee* decision, and the State's attorney did not find it. Superior Court Judge Dan A. Hensley discovered *McGhee* on his own, but he concluded that it was factually distinguishable:

McGee v. State [sic], not cited by either party, addresses a similar issue, but is distinguishable on its facts. McG[h]ee negotiated a deal manipulating the date of a DWI conviction and then moved to modify the terms of an administrative license revocation based on that prior conviction. The [supreme] court held that a license revocation could be set aside only for manifest injustice, and found that McG[h]ee's manipulation did not qualify.

But [the portion of the post-conviction relief statute], AS 12.72.010(3), on which Ms. Sjoblom relies here, does not employ a manifest injustice test. Under its terms Ms. Sjoblom need only prove that her prior conviction was set aside—nothing more. Statutes imposing criminal liability must be construed narrowly. I find that the statute provides no basis for this court to make an independent evaluation of the merits of Ms. Sjoblom's motion in the 1996 case or the validity of the deal setting aside her conviction.

"Decision and Order" of Judge Dan A. Hensley dated December 11, 2000, p. 3 (citations omitted).

To summarize: Mr. Cyrus offers two defenses to our order to show cause. First, he argues that even though we relied on *McGhee* when we dismissed Tyler's appeal, we were wrong to do so. Mr. Cyrus contends that because of *McGhee's* procedural context (an attack on the ruling of an administrative agency), the case had little or no relevance to the proper decision of Tyler's criminal appeal. Second, Mr. Cyrus argues that even if this court was right when we concluded that *McGhee* was dispositive of Tyler's appeal, this conclusion was reasonably debatable. Based on Judge Hensley's analysis in *Sjoblom,* Mr. Cyrus points out that competent attorneys and judges might reasonably conclude that *McGhee* was factually distinguishable from Tyler's case—and that, therefore, *McGhee* did not control the outcome of Tyler's appeal. Mr. Cyrus argues that if reasonable attorneys could conclude that *McGhee* was not controlling authority in Tyler's appeal, he was under no obligation to cite the case in his brief.

Of the two defenses advanced by Mr. Cyrus, this second one is clearly the stronger. Judge Hensley's decision in the *Sjoblom* case shows that Mr. Cyrus was not alone in thinking that *McGhee* should be limited to an administrative context and should not be viewed as controlling authority in criminal cases that raise the same re-conviction issue.

And if reasonable attorneys and judges could disagree on the question of whether *McGhee* was controlling authority in Tyler's case, then regardless of whether this court correctly interpreted *McGhee* when we decided Tyler's appeal, it would be improper to fault Mr. Cyrus for taking another reasonable view of the matter.

We agree with Mr. Cyrus that, for present purposes, it does not matter whether our decision in *Tyler* was correct, or whether our decision in *Tyler* is arguably inconsistent with Judge Hensley's decision in *Sjoblom,* or whether Judge Hensley was right or wrong when he concluded that *McGhee* did not control Sjoblom's case. Instead, as Mr. Cyrus correctly points out, Judge Hensley's decision shows that reasonable judges might differ as to whether *McGhee* precludes the type of post-conviction claim presented by Sjoblom or the appellate claim made by Tyler— the claim that if a defendant is convicted of felony DWI but later wins a plea withdrawal in one of the prior DWI cases, then even if the defendant is re-convicted of that prior offense, the superior court must set aside the felony DWI conviction. Thus, Mr. Cyrus might reasonably have concluded that the *McGhee* decision did not control the outcome of Tyler's appeal.

But Mr. Cyrus's defense to our order to show cause also hinges on his assertion that Professional Conduct Rule 3.3(a)(3) only requires attorneys to reveal "controlling" court decisions and statutes. This is not correct.

*(b) As used in Professional Conduct Rule 3.3(a)(3), "directly adverse" is not synonymous with "controlling" or "dispositive"*

Fortified by Judge Hensley's decision in *Sjoblom,* Mr. Cyrus argues that "if attorneys could [reasonably] disagree as to [whether *McGhee* was] controlling authority", then his failure to cite *McGhee* can not constitute a violation of Professional Conduct Rule 3.3(a)(3). The problem with Mr. Cyrus's argument is that Rule 3.3(a)(3) does not speak of an attorney's failure to cite "controlling authority". Instead, it speaks of an attorney's failure to cite authority in the "controlling jurisdiction" if that authority is *"directly adverse* to the [lawyer's] position".

*McGhee* was decided by our state supreme court, so it clearly constitutes "authority in the controlling jurisdiction". The next question is whether *McGhee* was "directly adverse" to Mr. Cyrus's position in Tyler's appeal. The legislative history of Professional Conduct Rule 3.3(a)(3) and the commentaries on the rule show that "directly adverse" does not mean "controlling". It refers to a broader range of cases and statutes.

The meaning of "directly adverse" is explained in Formal Opinion No. 280 issued by the American Bar Association's Committee on Professional Ethics and Grievances. The Committee had been asked to clarify the "duty of a lawyer ... to advise the court of decisions adverse to his client's contentions that are known to him and unknown to his adversary". The Committee wrote:

> We would not confine the [lawyer's duty] to "controlling authorities' "—*i.e.,* those decisive of the pending case—but, in accordance with the tests hereafter suggested, would apply it to a decision directly adverse to any proposition of law on which the lawyer expressly relies, which would reasonably be considered important by the judge sitting on the case.
>
> . . .
>
> Canon 22 should be interpreted sensibly, to preclude the obvious impropriety at which the Canon is aimed. In a case involving a [settled question of law], there would seem to be no necessity whatever of citing even all the relevant decisions in the jurisdiction, much less those from other states or by inferior courts. [But w]here the question is a new or novel one, such as the constitutionality or construction of a statute, on which there is a dearth of authority, the lawyer's duty may be broader.

The Committee then defined the duty of disclosure:

> The test in every case should be: Is the decision which opposing counsel has overlooked one which the court should clearly consider in deciding the case? Would a reasonable judge properly feel that a lawyer who advanced, as the law, a proposition adverse to the undisclosed decision,

was lacking in candor and fairness to him? Might the judge consider himself misled by an implied representation that the lawyer knew of no adverse authority?

This ethics opinion was issued in June 1949. The Committee was not discussing current Professional Conduct Rule 3.3(a)(3), but rather a predecessor rule, Canon 22 of the Canons of Professional Ethics adopted by the American Bar Association in 1908. However, the Committee has since declared that the same test applies to Professional Conduct Rule 3.3(a)(3).

In March 1984, the American Bar Association's Committee on Ethics and Professional Responsibility issued Informal Opinion No. 84–1505, in which the Committee discussed a lawyer's duty under Rule 3.3(a)(3) to disclose a decision of a controlling court "which may be interpreted as adverse to his client's position". The Committee concluded that the lawyer was obligated to disclose the decision, although the lawyer could "[o]f course ... challenge the soundness of the other decision, attempt to distinguish it from the case at bar, or present other reasons why the court should not follow or even be influenced by it." The Committee explained that this question was governed by the test the Committee had earlier announced in Formal Opinion 280:

> Rule 3.3(a)(3) of the Model Rules of Professional Conduct provides, "A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." This provision is virtually identical to its predecessor, DR 7–106(B)(1) of the Model Code of Professional Responsibility. Both provisions continue essentially unchanged the theme of Canon 22 of the Canons of Professional Ethics adopted by the American Bar Association in 1908.

Under Canon 22, this Committee issued two opinions bearing on the question presented. In 1935 the Committee decided that a lawyer has a duty to tell the court in a pending case of decisions, unknown to his adversary, that are adverse to his client's contentions. We said, "He may, of course, after doing so, challenge the soundness of the decisions or present reasons which he believes would warrant the court in not following them in the pending case." In 1949, the Committee, in Formal Opinion 280, first interpreted Opinion 146 to limit the duty of disclosure to only those decisions which were "directly adverse." We then continued:

> We would not confine the Opinion to "controlling authorities"—*i.e.,* those decisive of the pending case—but ... would apply it to a decision directly adverse to any proposition of law on which the lawyer expressly relies, which would reasonably be considered important by the judge sitting on the case.

The Committee then concluded that, in the case before them, the lawyer was duty-bound to disclose a court decision that could reasonably be interpreted as directly contrary to his position:

> Under one interpretation of the decision, it is clearly "directly adverse to the position of the client." And it involves the "construction of a statute on which there is a dearth of authority."
>
> ...
>
> The issue is potentially dispositive of the entire litigation. [A lawyer's] duty as an officer of the court to assist in the efficient and fair administration of justice compels plaintiff's lawyer to make the disclosure immediately.

In a strikingly similar case, *Seidman v. American Express Company,* 523 F.Supp. 1107 (E.D.Pa.1981), the court, applying DR 7–106(B)(1), came to the same conclusion on the duty to disclose as does the Committee in this opinion. There a trial court commended defendant's lawyer for calling attention, after oral argument, to a recent case that severely undercut the position defendant had taken at oral argument....

■ Under the interpretation of Rule 3.3(a)(3) espoused in these ABA ethics opinions, a court decision can be "directly adverse" to a lawyer's position even though the lawyer reasonably believes that the decision is factually distinguishable from the current case or the lawyer reasonably believes that,

for some other reason, the court will ultimately conclude that the decision does not control the current case.

This interpretation of a lawyer's duty to cite adverse authority was adopted by the New Jersey Supreme Court in *In re Greenberg*, 15 N.J. 132, 104 A.2d 46, 48–49 (1954). It was also anticipated (four years before the ABA issued Ethics Opinion 280) by the California Supreme Court in *Shaeffer v. State Bar of California*, 26 Cal.2d 739, 160 P.2d 825 (1945).

In *Shaeffer*, a lawyer relied on a decision of the California Supreme Court to argue that his opponent's complaint was flawed and should be dismissed. The lawyer failed to mention that the California Court of Appeal had issued a decision expressly rejecting the lawyer's interpretation of the supreme court case. When the court of appeal's decision was discovered, the lawyer declared that he omitted telling the trial judge about that decision because he thought that the court of appeal's discussion of the point was *dictum*, and that there was still no controlling authority contrary to his interpretation of the supreme court case. The California Supreme Court viewed the matter differently:

> In view of [the attorney's] familiarity with the [court of appeal] case, he should ... have directed the trial court's attention to the decision and [openly] argued [his] contentions ... that the case was not controlling.

*Shaeffer*, 160 P.2d at 829.

See also *Mannheim Video, Inc. v. Cook County*, 884 F.2d 1043 (7th Cir.1989), in which the Seventh Circuit indicated that it would have upheld sanctions against a lawyer who engaged in similar conduct:

> [C]ounsel argues that [sanctions would be inappropriate because] he believes that [the] *Ciotti[ v. County of Cook*, 712 F.2d 312 (7th Cir.1983)] [decision] is not controlling.... *Hill [v. Norfolk & Western Railway*, 814 F.2d 1192, 1198 (7th Cir.1987),] and *Bonds [v. Coca–Cola Company*, 806 F.2d 1324, 1328 (7th Cir.1986),] made clear that an attorney should not ignore potentially dispositive authorities; the word "potentially" deliberately included those cases arguably dispositive. Counsel is certainly

under obligation to cite adverse cases which are ostensibly controlling and then may argue their merits or inapplicability.

*Id.* at 1047.

This same interpretation of a lawyer's duty has also been endorsed by legal commentators. For instance, in their work *The Law of Lawyering* (2nd ed.1998), Professors Geoffrey C. Hazard and W. William Hodes write:

> The requirement that the authority be "directly adverse" has caused some problems of interpretation. Almost any adverse precedent can be distinguished.... Some might argue, therefore, that precedent which can be distinguished is not "directly" adverse and need not be revealed in the first place. This interpretation trivializes the rule and does not adequately protect the court.
>
> Formal [Ethics] Opinion 280 (1949) sounded the right note on this issue when it suggested that the standard should be whether the omitted authorities "would be considered important by the judge sitting on the case," or whether the judge might consider himself "misled" if he remained unaware of them.

*Id.* at § 3.3:206, p. 592.

Similarly, in his book *Professional Responsibility* (3rd ed.1992), Professor Ronald D. Rotunda writes:

> [T]he rule does not speak of "controlling authorities." ... ABA Formal Opinion 280 (June 18, 1949) rejects the narrow view that a lawyer must only cite decisions that are decisive of the pending case. Rather, the disclosure rule applies to ... "a decision directly adverse to any proposition of law on which the lawyer expressly relies, which would reasonably be considered important by the judge sitting on the case...."

*Id.*, "Disclosure of Adverse Legal Authority", p. 163.

In their work *Professional Responsibility in a Nutshell* (2nd ed.1991), Professors Robert H. Aronson and Donald T. Weckstein echo this view of Professional Conduct Rule 3.3(a)(3) in even stronger language:

It has been settled that a lawyer has an obligation to avoid knowingly making a false statement of law. . . . Thus, to assert that a particular proposition is the law in the controlling jurisdiction, when that proposition appears to have been completely or partially undermined by a recent case, is a misrepresentation of the state of the law, tantamount to making a false statement of law, and is different only in degree, not in kind, from citing an overruled case.

Of course, if the recent adverse case is distinguishable . . . or is otherwise construable as not controlling, these points can and should be raised.

*Id.,* "Disclosure of Adverse Legal Authority", pp. 347–48.

> (c) *Using this definition of "directly adverse", did Mr. Cyrus know that McGhee was directly adverse to the position he was advancing in Tyler's appeal?*

Turning to the facts of Tyler's appeal, and using the test explained in the previous section, it is evident that the supreme court's decision in *McGhee* was "directly adverse" to the position that Mr. Cyrus was arguing in Tyler's appeal.

*McGhee* is the only Alaska Supreme Court decision (to our knowledge) that addresses the question raised in Tyler's appeal—the effect of a withdrawn plea and a re-conviction of DWI when a defendant faces harsher penalties if the defendant is found to be a repeat offender. The result reached in *McGhee* is the opposite of the result that Mr. Cyrus advocated in Tyler's appeal. And, although the matter was obviously debatable, one could reasonably interpret *McGhee* as being directly inconsistent with, or at least substantially undercutting, the argument that Mr. Cyrus was making in Tyler's case. Further, even if Mr. Cyrus thought that *McGhee* was distinguishable because of its procedural context, Tyler's appeal involved a novel issue on which there was a dearth of authority, and *McGhee* was the only Alaska decision that came close to addressing this issue.

Given these circumstances, *McGhee* was "directly adverse" to Mr. Cyrus's position for purposes of Professional Conduct Rule 3.3(a)(3). In the words of ABA Formal Ethics Opinion 280, *McGhee* is a decision "which would reasonably be considered important" by this court, a decision "which the court should clearly consider in deciding [Tyler's] case".

▪ We recognize that advocacy invariably includes a process of separating wheat from chaff, of deciding which arguments and legal authorities are important to a case. Moreover, as we stated earlier, an attorney's ethical duties must not be judged in hindsight. When an attorney consciously decides not to cite a court decision or a statute, the attorney's choice should not—and does not—become a violation of Professional Conduct Rule 3.3(a)(3) simply because the court later concludes that the omitted decision or statute is directly adverse to the attorney's position. Rather, an attorney violates Rule 3.3(a)(3) only if the *attorney knew* that the omitted legal authority was directly adverse to the attorney's position.

But in Mr. Cyrus's response to our order to show cause, he does not claim ignorance of *McGhee's* potential importance to Tyler's appeal. Rather, he claims that he was not obliged to bring *McGhee* to our attention because he honestly believed that *McGhee* was factually distinguishable from Tyler's case and that, therefore, *McGhee* did not control our decision.

As explained above, this does not excuse Mr. Cyrus's failure to cite *McGhee*. When an attorney knows of a decision that is "directly adverse" under the test we have explained, and when opposing counsel fails to cite that decision, Rule 3.3(a)(3) requires the attorney to reveal the decision even though one could reasonably argue that it does not control the case at hand.

We assume that reasonable attorneys and judges might conclude that *McGhee* did not dictate our decision in Tyler's case (because of its different procedural setting). Nevertheless, *McGhee* was directly adverse to Mr. Cyrus's position within the meaning of Professional Conduct Rule 3.3(a)(3). Mr. Cyrus was the attorney who litigated *McGhee*: he knew about the case, and he understood its

relevance to Tyler's appeal. Even assuming that Mr. Cyrus had a good faith and reasonable belief that *McGhee* could be distinguished, he was obliged to bring *McGhee* to our attention once he realized that the State's attorney had failed to cite the case.

■ We readily acknowledge that appellate litigation is a contest, not a seminar. The lawyers who appear before us do so as adversaries and advocates. Our adversary system is based on the belief that the fairest results and the best rules of law are discovered through vigorous presentation of opposing viewpoints. But attorneys are officers of the court, and they owe a duty of candor to the court:

> Although a lawyer's paramount duty is to pursue the client's interests vigorously, that duty must be met in conjunction with, rather than in opposition to, [the lawyer's] other professional obligations.... Implicit in the lawyer's role as officer of the court is the general duty of candor.

American Bar Association, *Annotated Model Rules of Professional Conduct* (4th ed.1999) (citation and internal quotation marks omitted), Rule 3.3, "Legal Background", p. 315.

■ This duty of candor includes the obligation imposed by Professional Conduct Rule 3.3(a)(3)—the obligation to disclose legal authorities that the court should, in fairness, consider when making its decision, even when these authorities are adverse to the lawyer's position. As explained in the Comment to Alaska's Professional Conduct Rule 3.3(a),

> A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities.... The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

Comment to Rule 3.3, third paragraph, "Misleading Legal Argument".

In Great Britain, barristers are under "an unquestioned obligation" to cite all relevant law, both favorable and unfavorable.[16] Professional Conduct Rule 3.3(a)(3) does not impose such a broad duty on Alaska attorneys. But although our state's duty of disclosure is narrower, enforcement of this duty remains important.

The process of deciding appeals involves the joint efforts of counsel and the court. As the Supreme Court of New Jersey has noted, "[i]t is only when each branch of the profession performs its function properly that justice can be administered to the satisfaction of both the litigants and society".[17] Only then can an appellate court "[develop] a body of decisions ... that will be a credit to the bar, the courts[,] and the state." [18]

When a lawyer practicing before us fails to disclose a decision of the Alaska Supreme Court (or one of our own published decisions) that is directly adverse to the lawyer's position, the lawyer's conduct will, at the very best, merely result in an unneeded expenditure of judicial resources—the time spent by judges or law clerks in tracking down the adverse authority. At worst, we will not find the adverse authority and we will issue a decision that fails to take account of it, leading to confusion in the law and possibly unfair outcomes for the litigants involved. This potential damage is compounded by the fact that our decision, if published, will be binding in future cases.[19]

In addition, we note that at least one court has suggested that a lawyer's failure to disclose adverse authority also implicates the lawyer's duty to the client. In a criminal case, a lawyer must abide by the defendant's decision whether to pursue an appeal. *See* Professional Conduct Rule 1.2(a). Under Professional Conduct Rule 1.4(b), the lawyer has a concomitant obligation to explain matters to the defendant "to the extent reasonably necessary to permit the [defendant] to

---

**16.** *See* Charles W. Wolfram, *Modern Legal Ethics* (1986), § 12.8, p. 682 n. 5.

**17.** *In re Greenberg*, 15 N.J. 132, 104 A.2d 46, 49 (1954).

**18.** *Id.*

**19.** *See* Robert H. Aronson and Donald T. Weckstein, *Professional Responsibility in a Nutshell* (2nd ed.1991), p. 348; Geoffrey C. Hazard and W. William Hodes, *The Law of Lawyering* (2nd ed.1998), p. 591.

make informed decisions" on this issue. In *Matter of Thonert*, 733 N.E.2d 932 (Ind. 2000), the Indiana Supreme Court found that an attorney violated Professional Conduct Rule 1.4(b) when the attorney counseled his client to pursue an appeal of a DWI conviction but failed to apprise the client of adverse authority:

> By failing to advise his client of a ruling in the controlling jurisdiction that was adverse to the legal arguments contemplated for his client's ... appeal, and instead choosing only to advise the client of an earlier appellate decision favorable to his position, [Thonert] effectively divested his client of the opportunity to assess intelligently the legal environment in which his case would be argued and [impeded his client's ability] to make informed decisions regarding whether to go forward with [the appeal].

*Id.* at 934.

■ Professional Conduct Rule 3.3(a)(3) is based on the notion that "[t]he function of an appellate brief is to assist, not mislead, the court."[20] We endorse the words of the Florida Court of Appeal in *Forum v. Boca Burger, Inc.*, 788 So.2d 1055 (Fla.App.2001):

> Although we have an adversary system of justice, it is one founded on the rule of law. Simply because our system is adversarial does not make it unconcerned with outcomes.... We do not accept the notion that outcomes should depend on who is ... [most] able to misdirect a judge.
>
> ...
>
> Much is written about "professionalism" today. It is on the agenda at every [legal] symposium or continuing education conference, and our professional journals are filled with pleas for greater attention to punctilious conduct in all things. But ... we [must now] pass from exhortation to [action].

*Id.* at 1062.

Although we accept Mr. Cyrus's assertion that he honestly and reasonably believed that *McGhee* could be distinguished from Tyler's case, Mr. Cyrus does not contend that he was unaware of *McGhee's* potential importance to the decision of Tyler's appeal. *McGhee* was the only Alaska appellate decision that discussed, or came close to discussing, the issue that Mr. Cyrus knew would determine the validity of Tyler's *Cooksey* plea. And the result in *McGhee* was the opposite of the result advocated by Mr. Cyrus in Tyler's case.

Mr. Cyrus knew that *McGhee* could reasonably be interpreted as rejecting or casting substantial doubt on his position. *McGhee* was therefore "directly adverse" authority for purposes of Professional Conduct Rule 3.3(a)(3), and Mr. Cyrus was obligated to bring *McGhee* to our attention when he realized that the State had not cited it. Mr. Cyrus failed in that duty.

We acknowledge that Professional Conduct Rule 3.3(a)(3) has not previously been interpreted by the appellate courts of this state. Given that fact, Mr. Cyrus might plausibly have been unaware of the definition of "directly adverse", and he might honestly have thought that Rule 3.3(a)(3) only required him to cite adverse authority if that authority unquestionably controlled the litigation. But, as we have explained here, the American Bar Association and various courts and commentators have adhered to a broader definition of "directly adverse" for more than half a century. While Mr. Cyrus's misunderstanding of the rule may be a mitigating circumstance, it does not justify his conduct.

*Conclusion: Mr. Cyrus is ordered to pay a $250 fine*

■ Alaska Appellate Rule 510(c) authorizes this court to fine an attorney "for failure to comply with [the appellate] rules or any other rules promulgated by the Supreme Court". We have concluded that Mr. Cyrus violated Civil Rule 11 when he filed his brief without making a reasonably diligent inquiry into the facts governing Tyler's right to pursue the appeal. We have also concluded that Mr. Cyrus violated Professional Conduct Rule 3.3(a)(3) when, in his opposition to the State's motion to dismiss the appeal, he knowingly failed to alert us to the supreme court's decision in *McGhee v. State*.

---

20. *Cicio v. City of New York*, 98 A.D.2d 38, 469 N.Y.S.2d 467, 469 (N.Y.App.1983).

This is not the first time that Mr. Cyrus has engaged in misconduct in this case. Last October, this court fined Mr. Cyrus $200 because he intentionally delayed filing Tyler's appeal for five weeks, waiting until the 90th day following the distribution of the judgement. Mr. Cyrus had no reason for this delay. He apparently assumed (correctly) that we would not wish to penalize a criminal defendant for an attorney's dilatory conduct, and that we would therefore accept Tyler's appeal as long as it was filed by the 90th day. (See Appellate Rules 502(b) and 521, which prohibit us from accepting an appeal that is filed more than 60 days late— *i.e.,* more than 90 days after the distribution of the trial court's judgement.)

This earlier misconduct could be viewed as an aggravating circumstance. On the other hand, we are willing to assume that Mr. Cyrus's misstatement of the jurisdictional facts of Tyler's appeal stemmed, not from an intent to mislead, but from faulty memory and failure to exercise diligence in checking his memory against the record. Similarly, we assume that Mr. Cyrus did not act in bad faith when he chose not to cite *McGhee*. That is, although Mr. Cyrus consciously decided not to mention the *McGhee* decision in his brief to this court, we assume that he honestly believed that *McGhee* was distinguishable and that Rule 3.3(a)(3) only required him to disclose controlling authority.

Alaska Appellate Rule 510(c) authorizes us to impose a fine of up to $500 for violation of the rules of court. Having considered all of the circumstances, we conclude that we should impose a total fine of $250 for these two violations. Mr. Cyrus shall pay the $250 to the Clerk of the Appellate Courts within 30 days of the issuance of this opinion.

### Order

### Petition for Rehearing

Attorney Eugene B. Cyrus seeks rehearing of our decision to fine him under Appellate Rule 510(c) for failing to bring *McGhee v. State,* 951 P.2d 1215 (Alaska 1998), to our attention when we were trying to assess the validity of the *Cooksey* plea entered by his client, David Tyler.

Our reasons for imposing this fine are fully explained in our prior opinion, *Tyler v. State,* Alaska App. Opinion No. 1763 (September 14, 2001). We briefly summarize those reasons here:

### *Recapitulation of the litigation thus far*

David Tyler was convicted of felony DWI. He appealed, contending that his two prior DWI convictions (which were based on pleas of no contest) were flawed by errors in the entry-of-plea process. Tyler argued that because his two prior convictions were flawed, he should be treated as a first offender and his current felony conviction should be reduced to a misdemeanor.

Tyler's appeal proceeded through preparation of the record and the filing of Tyler's opening brief. But then, instead of filing an appellee's brief, the State moved to dismiss the appeal.

The State declared that Tyler's opening brief misstated this court's jurisdiction to hear the case. According to the State's motion, Tyler was not convicted at a trial (as Tyler's opening brief claimed). Rather, Tyler entered a *Cooksey* plea, purporting to preserve his attack on his two prior convictions. The State argued that this *Cooksey* plea was not valid because the issue preserved (Tyler's attack on his prior convictions) was not a dispositive issue. The State contended that even if Tyler's pleas to the two prior DWIs were flawed, Tyler could be re-prosecuted for the two prior DWIs—and, if those renewed prosecutions were successful, Tyler would still be a third offender for purposes of his current DWI.

Mr. Cyrus filed an opposition to the State's motion to dismiss. He argued that Tyler's *Cooksey* plea was valid because the State's legal analysis was wrong. According to Mr. Cyrus, if Tyler prevailed on appeal and had his two prior DWI convictions vacated, then even if the State later successfully re-prosecuted Tyler for those prior DWIs, he would remain a first offender for purposes of his current offense, because those two other DWI convictions would no longer be "prior" to his current offense.

It was in this pleading that Mr. Cyrus failed to mention the supreme court's decision in *McGhee*—a case that we ultimately determined was fatal to Mr. Cyrus's argument about the prior offenses. Because Mr. Cyrus was the attorney who represented the petitioner-motorist in *McGhee*, we knew that Mr. Cyrus was aware of the *McGhee* decision. Under Alaska Professional Conduct Rule 3.3(a)(3), an attorney is obligated to disclose directly adverse authority if the opposing attorney has not brought the adverse authority to the court's attention. We therefore ordered Mr. Cyrus to show cause why he should not be sanctioned for failing to cite *McGhee* when he responded to the State's motion to dismiss.

Mr. Cyrus filed a lengthy response in which he argued that he was under no obligation to cite *McGhee* because *McGhee* was not "controlling authority". According to Mr. Cyrus, there were substantial procedural differences between Tyler's case and the litigation in *McGhee*, and thus the decision in *McGhee* was distinguishable.

In *Tyler*, we concluded that despite the arguable differences between the facts of *McGhee* and the facts of Tyler's case, Mr. Cyrus was still under an obligation to bring *McGhee* to our attention. Interpreting Professional Conduct Rule 3.3(a)(3), we held that "directly adverse" authority encompassed more than "controlling" authority and that Mr. Cyrus was under a duty to disclose *McGhee* even though he reasonably believed it could be distinguished from Tyler's case.

### Mr. Cyrus's petition for rehearing

Mr. Cyrus presents two arguments in his petition for rehearing.

█ First, Mr. Cyrus asserts that he did not intend to deceive this court when he omitted any mention of *McGhee* in his opposition to the State's motion to dismiss the appeal. Mr. Cyrus points out that he cited *McGhee* in his opening brief. This is true. However, Mr. Cyrus cited *McGhee* for an unrelated point of law.

The question of the validity of Tyler's *Cooksey* plea, and *McGhee's* relevance to this question, had not yet arisen when Mr. Cyrus filed Tyler's opening brief. Mr. Cyrus's opening brief falsely stated that Tyler had been convicted following a court trial. Until the State filed its motion to dismiss, this court had no idea that Tyler had in fact been convicted based on a *Cooksey* plea. Given these facts, Mr. Cyrus obviously did not address the validity of Tyler's *Cooksey* plea until he responded to the State's motion to dismiss the appeal. We fined Mr. Cyrus for failing to cite *McGhee* when he opposed the State's motion to dismiss Tyler's appeal.

The fact that Mr. Cyrus cited *McGhee* on a different point in his opening brief may be an interesting coincidence, but it is not relevant to our decision to impose the fine. The irrelevance of the citation to *McGhee* in the opening brief is underscored by this fact: when Mr. Cyrus responded to our order to show cause, he failed to mention that he had cited *McGhee* in his opening brief. Either Mr. Cyrus forgot that he had cited *McGhee* (because the case was cited for an unrelated point), or he knew that his citation of *McGhee* on an unrelated point did not provide a defense to our order to show cause.

Finally, we note that when we imposed sanctions on Mr. Cyrus, we expressly did so under the assumption that Mr. Cyrus had not actively tried to deceive us—that he "did not act in bad faith when he chose not to cite *McGhee*."[1] Although we found that Mr. Cyrus "consciously decided not to mention *McGhee*", we assumed "that he honestly believed that *McGhee* was distinguishable and that Rule 3.3(a)(3) only required him to disclose controlling authority."[2] We therefore reject Mr. Cyrus's first argument for rehearing.

█ Mr. Cyrus's second argument is that he did not violate Professional Conduct Rule 3.3(a)(3) when he purposefully chose not to cite *McGhee* in his opposition to the State's motion to dismiss Tyler's appeal.

Mr. Cyrus points out that Rule 3.3(a)(3) forbids an attorney from "knowingly ...

---

**1.** *Tyler,* opinion at 1110.

**2.** *Id.*

fail[ing] to disclose ... legal authority in the controlling jurisdiction *known to the lawyer* to be directly adverse to the position of the client". (Emphasis added) Mr. Cyrus contends that he did not violate Rule 3.3(a)(3) because he did not *know* that *McGhee* was directly adverse to his position.

Mr. Cyrus's argument is based on the fact that the definition of "directly adverse" has a certain amount of vagueness to it. In *Tyler*, we referred to different formulations of the "directly adverse" test. The chief definitions we used were:

> (1) legal authorities "which would reasonably be considered important by the judge [deciding] the case" [3] and

> (2) legal authorities "that could reasonably be interpreted as directly contrary to [the lawyer's] position" [4] or that "could reasonably [be] interpret[ed] as being directly inconsistent with, or at least substantially undercutting" the lawyer's position.[5]

Mr. Cyrus argues that there is so much imprecision in these definitions that it will be rare for an attorney to know that a case is "directly adverse". Mr. Cyrus contends that there will always be a few cases that are clearly "directly adverse" and a few other cases that are clearly not "directly adverse"—leaving "a vast middle-ground" of cases that one can not easily categorize because "[t]here is no bright-line test for making the determination."

In *Tyler*, we concluded that any imprecision in the definition of "directly adverse" did not matter—because Mr. Cyrus never argued that he failed to understand *McGhee*'s relevance to Tyler's appeal:

> [A]n attorney violates Rule 3.3(a)(3) only if the *attorney knew* that the omitted legal authority was directly adverse to the attorney's position. But in Mr. Cyrus's response to our order to show cause, he does not claim ignorance of *McGhee*'s potential importance to Tyler's appeal. Rather, he claims that he was not obliged to bring *McGhee* to our attention because he hon-

estly believed that *McGhee* was factually distinguishable from Tyler's case and that, therefore, *McGhee* did not control our decision.

*Tyler*, Alaska App. Opinion No. 1763, opinion at 1107.

Now, in his petition for rehearing, Mr. Cyrus makes the argument that he failed to make before. Through another attorney (an associate at his law firm), Mr. Cyrus asserts that he *was* in fact ignorant of *McGhee*'s potential importance to Tyler's appeal. Mr. Cyrus's attorney declares:

> [F]aced with a somewhat vague standard[, Mr. Cyrus] reasonably believed that *McGhee* was so far over the line [*i.e.*, so easily distinguishable from, and so obviously irrelevant to Tyler's case] that ... mention [of *McGhee*] would not be useful to the Court.... [Mr.] Cyrus submits that [an attorney's] good faith belief that a decision ... involves greatly different facts and legal issues ... obviates [the attorney's] duty to disclose it.

> ...

> [When Mr. Cyrus responded] to this Court's show-cause order, [Mr.] Cyrus repeatedly emphasized that *McGhee* was not "controlling authority". This, of course, is not precisely the issue.... [But] the same reasons advanced by [Mr.] Cyrus in his response ... support a finding that [Mr.] Cyrus did not knowingly fail to disclose directly adverse authority [because] at some point the dissimilarities between authoritative cases and pending cases become[ ] so great as to mandate the conclusion that the authorities are not directly adverse to the pending cases.

We reject this argument for two reasons.

First, we refuse to credit Mr. Cyrus's assertions about his mental state and his subjective analysis of *McGhee* because these assertions are not supported by Mr. Cyrus's affidavit or by any other statements that we can attribute to him personally. The current assertions about Mr. Cyrus's legal evaluation of *McGhee* and his intentions when he failed

---

**3.** *Tyler,* opinion at 1104 and 1105 (quoting ABA ethics opinions).

**4.** *Id.,* opinion at 1105 (main text).

**5.** *Id.,* opinion at 1107.

to cite *McGhee* are all contained in a pleading signed by another attorney—George Dozier, an associate of Mr. Cyrus.

Second, it is now too late for Mr. Cyrus to present an alternative defense to our order to show cause. He had his chance to defend himself, and he never argued that he believed *McGhee* was irrelevant to the validity of Tyler's *Cooksey* plea—only that *McGhee* was not "controlling" on this issue. As we stated in *Booth v. State,* 903 P.2d 1079 (Alaska App.1995), when we denied the State's petition for rehearing:

> Appellate Rule 506(a) allows a party to seek rehearing when this court "has overlooked ... or failed to consider a principle directly controlling" the decision on appeal, or when this court "has overlooked ... [a]

material ... proposition of law". However, Rule 506(a) was not intended to allow parties to raise new arguments after they have had a chance to analyze an appellate court's decision.

*Id.* at 1090.

For these reasons, Mr. Cyrus's petition for rehearing is DENIED.

Entered at the direction of the court.