# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 11, 2008         Decided July 31, 2009

No. 07-5264

THEODORE R. LUCAS, ET AL.,
APPELLANTS

v.

ARNE DUNCAN, IN HIS OFFICIAL CAPACITY AS SECRETARY,
U.S. DEPARTMENT OF EDUCATION, HIS AGENTS AND
SUCCESSORS,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv02393)

———

*John F. Karl, Jr.* argued the cause and filed the briefs for appellant.

*Richard R. Renner* was on the brief for *amicus curiae* National Employment Lawyers Association in support of appellant.

*Mercedeh Momeni*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence* and *Yule Kim*, Assistant U.S. Attorneys.

Before: GINSBURG, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  This is an appeal from an order imposing sanctions against an attorney under Rule 11 of the Federal Rules of Civil Procedure.  A magistrate judge imposed the sanctions for statements that the attorney made in pleadings he filed on behalf of his client, the plaintiff in an employment discrimination suit.  For the reasons stated below, we vacate the sanctions order.

I

Attorney John F. Karl, Jr.'s client, Theodore Lucas, was an employee in the Department of Education's Office of Civil Rights.  In 1998, Lucas applied for a promotion to a position as a management and program analyst.  At that time, he was 61 years old and had both a law degree and more than 25 years' experience in civil rights enforcement.  The promotion went to Jerelyn Berry, a 43-year-old high school graduate, who had never attended college and who had previously worked as Lucas' secretary.

On November 16, 2001, Lucas sued the Secretary of Education under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, alleging that he was denied the promotion because of his age.  Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to proceed before a United States magistrate judge for all purposes.  Following discovery, the Department filed a Motion for Summary Judgment and a Statement of Material Facts Not in Dispute.  The Department's motion asserted that Berry's selection was based principally on

interviews with the candidates and that Berry had outperformed Lucas in those interviews.

Karl filed an opposition on Lucas' behalf. The opposition consisted of the following: a 35-page memorandum, entitled Plaintiff's Opposition to Defendant's Motion for Summary Judgment; a 104-paragraph document, entitled Plaintiff's Statement of Material Facts in Dispute and Material Facts Omitted by Defendant; an affidavit by Lucas; and numerous supporting exhibits. Lucas' papers asserted that there was direct evidence of discrimination: he said that at his selection panel interview, the selecting official -- Dr. Paul Fairley -- called Lucas an "old timer" and told him, "[y]ou know what this is all about." Pl.'s Statement of Material Facts in Dispute and Material Facts Omitted by Def. ¶ 78 [hereinafter Pl.'s Rule 7(h) Statement]. But Lucas primarily relied on circumstantial evidence, including that he was substantially more qualified than Berry and that she had been preselected before the interviews. As to the latter, Lucas contended that there was evidence indicating that Berry had received interview questions in advance and had been coached regarding how to respond, and that Fairley had created after-the-fact interview notes to support the preordained result.

On September 28, 2004, the magistrate judge issued an order requiring Karl to show cause why he had not violated Federal Rule of Civil Procedure 11(b)(3). That rule obligates an attorney to certify as to any written submission that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(3). The magistrate judge identified twelve statements in the papers Karl filed on behalf of Lucas that the judge

believed ran afoul of Rule 11(b)(3). The order was issued sua sponte, without a motion from the defendant suggesting that there was a Rule 11 problem in the plaintiff's pleadings. Karl filed a response to the order to show cause on December 2, addressing each of the statements that the order had highlighted as problematic.

On January 10, 2006, the magistrate judge issued a Memorandum Opinion and Order, in which he accepted Karl's explanation of a proofreading mistake in one of the twelve statements, but imposed sanctions on the basis of the other eleven. *Lucas v. Spellings*, 408 F. Supp. 2d 8 (D.D.C. 2006). The judge held, inter alia, that "Karl's statements obliterate again and again the distinction between drawing an inference and stating a fact and must therefore be condemned as a violation of the requirement of Rule 11 that the factual allegations in a document have evidentiary support." *Id.* at 13. The judge imposed a monetary sanction of $3000 and referred Karl to the United States District Court's Committee on Grievances to determine whether he violated the District of Columbia Rules of Professional Conduct.[1] *Id.* at 26-27.

---

[1] Appellant's brief represents that the District Court Committee on Grievances has advised Karl that the committee "decided, after careful review, that no further action is warranted as a result of the January 13, 2006 referral." Appellant's Br. 6 n.3. The brief further represents that the D.C. Office of Bar Counsel has advised Karl that: (1) "Because you filed an appropriate pleading to challenge the defendant's motion seeking to have your client's civil suit dismissed, we are unable to conclude by clear and convincing evidence that your conduct violated Rule 8.4(d)"; and (2) "there is insufficient evidence to support a finding that your conduct in drafting and filing the plaintiff's opposition to the motion for summary judgment violated Rule 3.1." *Id.*

The magistrate judge subsequently denied the Department of Education's summary judgment motion, and the case went to trial. At the close of the bench trial, the judge ruled in favor of the Department, and the plaintiff has filed an appeal that brings before us the interlocutory rulings that preceded the court's final judgment. *See Ciralsky v. CIA*, 355 F.3d 661, 668 (D.C. Cir. 2004). Lucas does not challenge his loss on the merits, and the sole issue on appeal is the appropriateness of the Rule 11 sanctions imposed on attorney Karl.

II

In *Cooter & Gell v. Hartmarx Corp.*, the Supreme Court held that appellate courts "should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." 496 U.S. 384, 405 (1990). The Court noted, moreover, that "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.*; *see* FED. R. CIV. P. 11, Advisory Comm. Notes (1993) (same).

*Cooter & Gell* involved sanctions imposed by the court upon motion of the opposing party. *See* FED. R. CIV. P. 11(c)(2). This case, by contrast, involves sanctions imposed by the court sua sponte, without motion of the opposing party. *See* FED. R. CIV. P. 11(c)(3). In recognition of the unusual position of the trial court in such circumstances, serving at once as both prosecutor and judge, the circuit courts have utilized different linguistic formulations to express the same idea: when the trial court imposes sanctions sua sponte, the reviewing court should engage in "careful appellate review" to assess whether there was an abuse of discretion. *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 40 (1st Cir. 2005); *see Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (holding that "[s]ua sponte Rule 11 sanctions . . . must be

reviewed with particular stringency" (internal quotation marks omitted)); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (holding that, where a sanction "was imposed sua sponte, we must examine the court's assertion that [the plaintiff's] legal contention was frivolous with particular stringency" (internal quotation marks omitted)).

Although both Karl and the Department of Education agree that this court should review the magistrate judge's order for abuse of discretion with particular care, *see* Oral Arg. Recording at 32:15-32:30, they disagree as to the substantive standard that the judge should himself have applied. Karl notes that Rule 11(c)(2), which governs Rule 11 sanctions initiated upon a party's motion, contains a "safe harbor" provision that permits the filer to avoid sanctions by withdrawing or correcting the challenged pleading within 21 days. Rule 11(c)(3), which governs sanctions imposed on the court's own initiative, does not contain such a provision. In light of this difference, and citing language in the Advisory Committee notes, Karl argues that only actions "akin to a contempt of court" should be subject to the sua sponte imposition of Rule 11 sanctions.[2] Citing the language of the rule itself,[3] which does not distinguish between sanctions imposed after motion or sua sponte, the Department argues that the standard under which an attorney's actions must be measured is in all cases "an objective standard of

---

[2]*See* FED. R. CIV. P. 11, Advisory Comm. Notes (1993) ("Since show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a 'safe harbor' to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative.").

[3]*See* FED. R. CIV. P. 11(b) (In presenting a pleading, an attorney certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the factual contentions have evidentiary support.).

reasonableness under the circumstances." Appellee's Br. 6 (citing *Bus. Guides v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991)). That is the standard the magistrate judge applied. *See Lucas*, 408 F. Supp. 2d at 11 ("Rule 11 requires . . . a determination as to whether, judged by the standard of a reasonable party or lawyer, the party or lawyer offended one of the rule's provisions. . . . Rule 11 . . . is based upon an objective evaluation of the lawyer's conduct.").

Both sides have support for their positions in the case law.[4] We need not enter this debate, however, because the sanctions order requires reversal regardless of which standard applies. As discussed below, the determination that the eleven statements violated Rule 11 was premised on two legal errors. And a trial court "necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law." *Cooter & Gell*, 496 U.S. at 405.

A

As the magistrate judge explained, the principal basis upon which he imposed sanctions was his finding that many of the eleven statements that Karl drafted were "classic examples of inferences disguised as statements of fact." *Lucas*, 408 F. Supp. 2d at 12. "[A] classic misstatement," he said, "is one in which an inference that might or might not be drawn from the facts is stated as a fact itself." *Id.* The judge illustrated this point with the following example:

---

[4]Compare cases adopting the "akin to contempt" standard, *e.g.*, *Kaplan*, 331 F.3d at 1256; *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003), with cases applying an objective reasonableness standard, *e.g.*, *Jenkins v. Methodist Hosps. of Dallas*, 478 F.3d 255, 264 (5th Cir. 2007); *Young*, 404 F.3d at 39.

> [T]hat a man walks into a room with a wet umbrella might permit the inference that the man was recently outside and that it was raining. It might also be true that the man decided to wash the umbrella. Given these facts, an advocate cannot first say "it was raining" but later, when challenged, explain that what was originally stated as a fact was actually only an inference that could have been drawn from the fact that the umbrella was wet. The statement, "it was raining" is objectively false. It asks the reader to believe that what is merely an inference that may be drawn from a set of facts is itself a fact.

*Id.* at 12-13. Citing a Ninth Circuit decision, which in turn quoted a 1954 New Jersey Supreme Court opinion, the magistrate judge held that "[w]hen he is indulging, as he has every right to do, in inferences or reasoning from the facts, [an attorney] must say so." *Id.* at 13 (quoting *In re Curl*, 803 F.2d 1004, 1006 (9th Cir. 1986) (quoting *In re Greenberg*, 104 A.2d 46, 47-48 (N.J. 1954))).[5]

---

[5]The magistrate judge quoted Karl's statements and then explained why he found that they improperly conflated inferences and facts. For example, Karl stated that "[e]xamination of the interview notes certainly supports a finding that Ms. Berry was given the interview questions" in advance. 408 F. Supp. 2d at 14. The judge imposed sanctions on the ground that "[e]quating what counsel claims is a fact -- that the notes show that Berry had the questions -- with a series of inferences drawn from all the other evidence (including the notes) is the very vice condemned as sanctionable conduct." *Id.* In another statement, Karl said that "Fairley refused to respond" to interrogatories. *Id.* at 17. For that statement, the judge imposed sanctions on the ground that, although "at one point Fairley failed to answer[,] . . . [t]o derive from his not answering the declaratory statement that he refused to answer . . . states as a fact what may or may not be true." *Id.* at 18. Karl also stated that "[t]here is

There is no basis in the text of Rule 11(b)(3) for the legal proposition that an attorney must separately identify "fact" and "inference." The Rule merely requires an attorney to certify that the factual contentions in a paper he presents to the court "have evidentiary support." FED. R. CIV. P. 11(b)(3). "Inferences" -- which are commonly described as "circumstantial evidence" -- are as capable of providing evidentiary support as "facts" -- which are commonly described as "direct evidence."[6] *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983) ("As in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence."); *Doe v. U.S. Postal Serv.*, 317 F.3d 339, 343 (D.C. Cir. 2003) ("[W]e generally draw no distinction between the probative value of direct and circumstantial evidence."). As a consequence, "juries are

---

circumstantial evidence sufficient to create an inference that the interview notes" that Fairley ultimately produced "were manufactured after the fact to justify a decision previously made on discriminatory grounds." *Id.* The magistrate judge sanctioned Karl on the ground that the statement impermissibly "equate[d] a fact -- that Fairley did not take contemporaneous notes -- with a conclusion -- that Fairley concocted notes afterwards to hide his preference for Berry because she was younger than" Lucas. *Id.* at 19. Karl was also sanctioned for stating that "the requirements of the job [were] watered down . . . in order to make Ms. Berry appear to be qualified," because the judge found that statement was based only on an inference from the fact that the requirements "were modified to uniformly reduce the value of all the [prior] criteria by 0.5 in order to permit the addition of a new category for evaluation." *Id.* at 15.

[6]*See* BAR ASS'N OF D.C., STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA (rev. ed. 2002) § 2.10 ("Direct evidence is the direct proof of a fact, such as the testimony of an eyewitness. Circumstantial evidence is indirect evidence of a fact which is established or *logically inferred* from a chain of other facts or circumstances." (emphasis added)).

routinely instructed that '[t]he law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting 1A K. O'MALLEY, J. GRENIG & W. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS, CRIMINAL § 12.04 (5th ed. 2000)). "The reason for treating circumstantial and direct evidence alike," the Supreme Court has explained, "is both clear and deep rooted: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" *Id.* (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 508 n.17 (1957)).

It is also relevant that Karl filed his opposition to summary judgment pursuant to Local Rules 7(h) and 56.1. Those rules require that "[a]n opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, *which shall include references to the parts of the record relied on to support the statement.*" D.D.C. LOCAL RULE 7(h) (emphasis added); *id.* 56.1 (same). Karl adhered to the rules, and each of the criticized sentences in Karl's Rule 7(h) Statement was followed by record citations indicating which evidence Karl thought supported the statement.[7] Thus, there was no hiding of the ball. Even if it mattered whether the supporting evidence was direct or circumstantial (and it does not), there was no possibility that the reader would be misled.

---

[7]Five of the sentences that the magistrate judge criticized were included in Karl's Opposition memorandum, rather than in the Statement, and hence arguably were not subject to Rule 7(h). Nonetheless, two of the five were followed by record citations, two referenced attached exhibits, and the last simply asserted a failure of explanation on the part of the agency.

There is, then, nothing in Rule 11 that required Karl's pleadings to distinguish between direct and circumstantial evidence. Nor does judicial precedent require such a distinction. The quotation from the 1954 New Jersey Supreme Court opinion is inapplicable, as that court was applying canons of professional responsibility and not a Federal Rule. *See In re Greenberg*, 104 A.2d at 48-49. Likewise inapposite is the Ninth Circuit's opinion in *Curl*, which contains the quotation from the New Jersey court: in *Curl*, the circuit admonished an attorney for misrepresenting the content of a Mexican judicial decision, not for failing to distinguish between kinds of evidence. *In re Curl*, 803 F.2d at 1006 (finding that the attorney represented that a Mexican appellate court had "affirmed the lower court," when it had not).[8] And even if a code of professional responsibility did require making such a distinction (although the District of Columbia's code apparently does not, *see supra* note 1), Rule 11 does not incorporate such codes,[9] and the magistrate judge

---

[8]Also inapplicable are the other precedents the magistrate judge cited for the proposition that Rule 11 requires a lawyer to "distinguish a fact from an inference he seeks to press on the court." *Lucas*, 408 F. Supp. 2d at 13 (quoting *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 819 (7th Cir. 1987)). *See Skycom*, 813 F.2d at 819 (stating that "[i]t is *unprofessional conduct* to represent inferences as facts" (emphasis added)); *In re Kelly*, 808 F.2d 549, 551 (7th Cir. 1986) (imposing discipline for "conduct unbecoming a member of the bar" under Federal Rule of Appellate Procedure 46(c), for presenting "a shot in the dark, a guess, . . . as positive fact, though [the attorney] made no effort to determine whether it was fact"); *see also In re: Cent. Ice Cream Co.*, 836 F.2d 1068, 1073 (7th Cir. 1987) (indicating that counsel violates Rule 11 by presenting "as a fact what counsel thinks *should have* occurred" (emphasis added)).

[9]*See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829-30 (9th Cir. 1986) ("Rule 11 is not a panacea intended to remedy all manner of attorney misconduct occurring before or during the trial of civil

stressed that he based his authority "to punish [Karl] solely on Rule 11." *Lucas*, 408 F. Supp. 2d at 11.

In short, the basic legal premise upon which sanctions were imposed was incorrect. To take the magistrate judge's example: If an attorney has evidence that a man "walked into a room with a wet umbrella" at a certain time, the attorney does have "evidentiary support" for the "factual contention" that "it was raining" at that time. *Id.* at 12.[10] He may not have proof by a preponderance, but he certainly has "support." Accordingly, a lawyer does not violate Rule 11 by saying so.

B

The magistrate judge also imposed sanctions on the premise that, when an attorney makes a factual contention, he must simultaneously disclose evidence that is contrary to that contention. The judge thought that Karl's failure to do so violated Rule 11, notwithstanding that he did have affirmative evidentiary support for his contentions.

For example, as evidence to show that Berry's promotion was not based on a fair competition, Karl stated: "Ms. Berry received the interview questions and coaching from [Management and Program Analyst] Art Besner prior to her

cases.").

[10]*Cf.* STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA § 2.10 ("For example, direct evidence of whether an animal was running in the snow might be the testimony of a person who actually saw the animal in the snow. Circumstantial evidence might be the testimony of a person who saw the tracks of the animal in the snow, rather than the animal itself. . . . The law makes no distinction between the weight to be given [to] either . . . .").

interview." Pl.'s Rule 7(h) Statement ¶ 85. In support, Karl cited evidence, which the magistrate judge described as follows:

> Both Mr. Lucas and [fellow employee] Ms. Powell heard Ms. Berry thank Mr. Besner for giving her the interview questions prior to the interview and telling her how to prepare for the interview. Mr. Lucas heard Mr. Besner tell Ms. Berry that he "hoped" he "helped her" prepare for the interview, and Ms. Berry replied that he did, and "thank you very much."

*Lucas*, 408 F. Supp. 2d at 23 (internal citations omitted) (quoting Pl.'s Rule 7(h) Statement ¶ 86). The magistrate judge did not disagree that Karl had such evidence, and in fact he did.[11] But the judge imposed sanctions because "the reader is never told about the information that, at the barest minimum, indicates that there are serious reasons to doubt the truthfulness of the assertion that Besner gave Berry the questions: the inconsistencies in plaintiff's testimony and Besner's insistence, confirmed by [selection panel member Jan] Gray, that Besner's questions were not the ones used in the interview." *Lucas*, 408 F. Supp. 2d at 24.

In a similar vein, Karl asserted that Berry had been preselected for the position before Lucas was interviewed. *See*

---

[11]In his deposition, Lucas testified that he overheard a conversation in which Besner asked Berry, "Did the material or did the questions help you in the interview[?]" Lucas Dep. 142 (Dec. 20, 2002); *see also id.* at 143-44. Powell's sworn declaration states that she overheard a conversation between Besner and Berry in which, "Ms. Berry thanked Mr. Besner for his assistance in giving her the information he had given to her *prior to the interview* and telling her what to study and how to prepare for the interview." Powell Decl. ¶ 13 (Dec. 6, 1999).

*Goostree v. Tennessee*, 796 F.2d 854, 861 (6th Cir. 1986) ("Evidence of preselection operates to discredit the employer's proffered explanation for its employment decision."). In the Rule 7(h) Statement, Karl wrote: "Dr. Fairley told Ms. Berry at her interview that she had been selected for the position, even though she was interviewed more than an hour *before* Mr. Lucas." Pl.'s Rule 7(h) Statement ¶ 78. To support this assertion, Karl cited Berry's deposition testimony wherein, as the magistrate judge recounted,

> Berry testified that during her interview, Fairley told her that the interviewing panel had selected her and that he then congratulated her. Karl then asked her: "So, presumably, he was telling you at that time you got the promotion." Berry responded yes.

*Lucas*, 408 F. Supp. 2d at 21 (internal citations omitted). Again, the judge did not dispute that Berry so testified, but imposed sanctions because the assertion of preselection did not take account of Berry's testimony on redirect examination that "Fairley told her she was the first choice of the interviewing panel but did not tell her she had received the position," and of the government's position that selection by the panel was not the same thing as selection by Fairley. *Id.*; *see* Berry Dep. 77-80 (Oct. 1, 2002).

The magistrate judge also criticized Karl for asserting that "Dr. Fairley refused to respond to the interrogatories from [an] EEO investigator and refused to turn over the notes during the first stages of the administrative process." *Lucas*, 408 F. Supp. 2d at 17 (quoting Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 26). Again, there is no doubt that Karl had support for this assertion. The EEO investigation report itself stated: "Mr. Fairley refused to provide the successful candidate's and the other candidates['] responses to the interview questions." Investigation Report at

4.  A memo attached to the report further stated that Dr. Fairley "failed to provide responses to the Interrogatories" after being "asked to respond to the Interrogatories on the record." Memorandum from Gertrude Brittingham-Bowman (EEO Investigator).  Nonetheless, the magistrate judge thought it a "half-truth to tell the reader that Fairley refused to turn over the notes but then not tell the reader why and then how the notes were turned over." *Lucas*, 408 F. Supp. 2d at 18.  Karl violated Rule 11, the judge said, by failing to include Fairley's explanation -- that he had turned over some notes and did not turn over others because his counsel told him not to.  *Id.* at 17.

There is nothing in the text of Rule 11(b)(3) to suggest that any of these statements violated that rule.  In each case, the "factual contentions" in Karl's pleadings had "evidentiary support," and that is all the rule requires. *See Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464, 467 (1st Cir. 1993) ("Rule 11 normally does not require one party to uncover and to set forth the facts that support the other side's position.").  This is not to say that it may never be misleading to assert that something has evidentiary support without advising the court of contrary facts.  But once again, context is relevant.

The pleading at issue here was an opposition to the defendant's motion for summary judgment.  The defendant's motion asserted that "there is no genuine issue of material fact precluding the entry of judgment for defendant as a matter of law."  Def.'s Mem. in Supp. of Its Mot. for Summ. J. at 1.  Under Local Rules 7(h) and 56.1, Karl's obligation in opposing the defendant's motion was to file a separate statement "setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated."  To do that, Karl was obliged to do no more than set forth facts in contravention of the defendant's claims.  The rules do not require him to rehearse the government's evidence, and nothing in Rule 11 imposes that

added burden. Nor could the omission of that evidence have been misleading to the reader. Many of the facts that the magistrate judge criticized Karl for failing to disclose in his opposition were contained in the government motion to which he was responding.[12] *Cf. Stitt v. Williams*, 919 F.2d 516, 528 (9th Cir. 1990) ("[Rule 11] [p]recedents regarding the filing of a frivolous complaint are not necessarily controlling in the case of an opposition to a summary judgment motion. . . . By the time a summary judgment motion is made, the record is sufficient for a court to determine frivolity on the basis of what appears before it, including the papers and documents relied on by the moving party. If the opposition is truly frivolous, the district judge can readily grant judgment for the movant . . . .").

Part of the problem may have been a misapprehension regarding the nature of the pleading that Karl filed on behalf of Lucas. At several points, the magistrate judge proceeded as if it were Karl -- rather than the defendant -- who was asserting that "there was no genuine issue of material fact." *Lucas*, 408 F. Supp. 2d at 22; *id.* at 23 (same). But Karl's pleadings did not contend that there was no genuine issue as to any fact. To the contrary, his contention was that there *was* a genuine dispute. He was opposing summary judgment, not seeking it, and hence had to show there was a factual dispute. *See* FED. R. CIV. P. 56(e)(2).[13] To accomplish that, he filed an "Opposition to

---

[12]*See, e.g.*, Def.'s Mem. in Supp. of Its Mot. for Summ. J. at 25-30 (regarding plaintiff's claim that Berry received the questions and coaching prior to her interview); *id.* at 5 (regarding plaintiff's claim that Berry was preselected before Lucas was interviewed).

[13]There was one exception, which Karl made clear. He did seek "partial summary judgment" for plaintiff on a single point: he asked the court to rule that Fairley's comment -- that Lucas was an "old timer" -- was direct evidence of age discrimination. Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 33.

Defendant's Motion for Summary Judgment" and attached a "Statement of Material Facts in Dispute and Material Facts Omitted by Defendant." The second sentence of the Opposition made its purpose clear: "As we show below, the agency's position lacks merit *because there are disputes of material fact* as to the real reason Mr. Lucas was denied the promotion at issue." Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 1 (emphasis added). Karl did not have to repeat the government's factual contentions in order to make that point or abide by the dictates of Rule 11.[14]

## III

We have examined each of the eleven statements at issue on this appeal. In light of the foregoing analysis, we conclude that none warranted the imposition of Rule 11 sanctions. Accordingly, the sanctions order is

*Vacated.*

---

[14]In a footnote, the Department agrees that Karl did not assert that the "Material Facts in Dispute" listed in the first half of the Rule 7(h) Statement were undisputed, but claims that he did make that assertion about the "Material Facts Omitted by Defendant" listed in the Statement's second half. Appellee's Br. 46 n.15. That is incorrect. The pleading neither suggested that plaintiff believed those material facts were undisputed, nor sought (rather than opposed) summary judgment based upon them.