# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 18, 2011          Decided March 1, 2011

No. 09-7095

BETTY GENE ALI,
APPELLEE

v.

RICHARD L. TOLBERT,
APPELLEE

ANTHONY G. NOBLE,
APPELLANT

Consolidated with 09-7096

Appeals from the United States District Court
for the District of Columbia
(No. 1:02-cv-02271)

*Thomas C. Willcox* argued the cause for appellee/cross-appellant Betty Gene Ali.

*Peter F. Axelrad* argued the cause for appellee/cross-appellee Richard L. Tolbert. *Michael S. Steadman, Jr.* was on brief.

*Pamela A. Bresnahan* argued the cause for appellant/cross-appellee Anthony L. Noble. *Elizabeth Treubert Simon* was on brief.

Before: HENDERSON, GARLAND and BROWN, *Circuit Judges*.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Betty Gene Ali appeals the district court's grant of summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on her claim that Richard Tolbert and Anthony L. Noble violated the District of Columbia Consumer Protection Procedures Act (CPPA) by inducing her to sell her house to Noble and then failing to pay her the full amount promised. *See Ali v. Mid-Atl. Settlement Servs., Inc.*, 640 F. Supp. 2d 1 (D.D.C. 2009). In addition, Noble appeals the district court's sanction under Rule 11 of the Federal Rules of Civil Procedure awarding Ali $25,230 for litigation expenses incurred because Noble evaded service of the complaint and failed to file an answer after service was effected. *See Ali v. Mid-Atl. Settlement Servs., Inc.*, 235 F.R.D. 1 (D.D.C. 2006). We affirm the summary judgment because the court correctly concluded on the record before it that Tolbert is not a "merchant" subject to the CPPA. We vacate the sanction award because Noble's conduct did not involve "[r]epresentations to the Court" made by "presenting to the court . . . a pleading, written motion, or other paper" sanctionable under Rule 11 and we remand to the district court to decide whether to sanction Noble instead under its inherent judicial authority.

## I.

The record reveals the following facts. In 1998, Ali inherited a house at 1010 G St. S.E. after her parents died. In 1999, she listed the house for sale for $299,000 but was unable to sell it. In January 2000, she secured a mortgage on the house for approximately $100,000. As of July 2000, the mortgage

balance was approximately $105,000 and Ali was some $11,000 in arrears. Faced with foreclosure, Ali met with an employee of the "EZ Mortgage" company in Lanham, Maryland to refinance her mortgage but was turned down. As the meeting ended, Ali learned that Tolbert, whom she knew from junior high school, was affiliated with EZ Mortgage and on the premises. She asked Tolbert—who was an "advertising consultant" at the company—for assistance in securing a loan but he was unable to help. In the days following the conversation, Ali telephoned Tolbert more than once to ask if he wanted to purchase her property and Tolbert eventually agreed to buy it on behalf of Noble, whom Tolbert referred to as his "step-son."

On August 3, 2000, Ali and Noble signed a sales contract under which Noble was to purchase the property from Ali for $150,000. They also signed an "Addendum Contract" which provided that Ali pay six per cent of the sales contract price toward Noble's closing costs and which further stated: "Both parties realize property is facing forecloser [sic]. Property is sold below market value to prevent forecloser [sic] sale." Addendum Contract to D.C. Real Estate Sales Contract, *Ali v. Mid-Atl. Settlement Servs., Inc.*, C.A. No. 02-2271 (D.D.C. Sept. 17, 2007) (JA 474). Noble paid Ali an immediate deposit of $500.00. On August 9, 2000, Noble paid $11,404.53 to Riggs Bank to bring Ali's mortgage current and prevent foreclosure. From that date to the closing on November 21, 2000, Noble tendered Ali six checks totaling $15,600.

Ali and Tolbert both attended the closing but Noble did not. At that time, Ali signed a "HUD-1" settlement sheet that identified Ali as the seller, Noble as the purchaser and the purchase price as $150,000. HUD-1 at 1, *Ali v. Mid-Atl. Settlement Servs., Inc.*, C.A. No. 02-2271 (D.D.C. Oct. 21, 2007) (Ex. C, Ali's Resp. to Def. Tolbert's Mot. for Summ. J) (JA 623). The HUD-1 also stated that Noble was paying Ali $199.22 for prepaid taxes, increasing the "GROSS AMOUNT

DUE TO SELLER" to $150,199.22, and listed deductions from this amount of $105,725.14 to satisfy the existing mortgage, $300 for a water bill escrow and $9,000 for Noble's closing costs, leaving $35,174.08 identified as "CASH TO SELLER." *Id.* Ali also signed a notarized "Agreement" of the same date, which stated:

> I, Betty G. Ali, hereby acknowledge that I have received a total sum of $29,996.42 from Anthony Noble for the real property located at 1010 G Street, S.E., Washington, D.C. All monies advanced through November 21, 2000 will be reimbursed to Mr. Noble at closing. Pre pay [sic] rent in the amount of $1,500.00 good thru [sic] January 2nd. Grand total of $31,496.42.

Agreement, *Ali v. Mid-Atl. Settlement Servs., Inc.*, C.A. No. 02-2271 (D.D.C. Jan. 24, 2006) (Ex. D, Opp'n to Pl.'s Mot. for Recons. of Ord. Denying Pl. Atty's Fees & Req. that Court Vacate Default J.) (JA 242). The settlement company then issued Ali a check in the amount of $3,177.66 reflecting the balance due Ali after these sums were deducted.[1]

On October 28, 2002, Ali filed an action in District of Columbia Superior Court, which was removed to the district court pursuant to 28 U.S.C. § 1441 based on diversity of citizenship. *See* Notice of Removal, *Ali v. Mid-Atl. Settlement Servs., Inc.*, C.A. No. 02-2271 (D.D.C. Nov. 18, 2002). The amended complaint asserts six counts against Tolbert, Noble or both but this appeal involves only Count 1 alleging that Tolbert

---

[1] As the district court noted, this balance is $500 less than the $35,174.08 figure on the HUD-1, which may reflect deduction of the $500 deposit Noble paid Ali at the time of the sales contract. *See Ali v. Mid-Atlantic*, 640 F. Supp. 2d at 5 n.3.

violated the CPPA, D.C. Code § 28-3904.[2]

On July 13, 2004, Ali filed a request for entry of default against Noble on the ground he had not filed an answer despite having been served multiple times, in both Forest Heights, Maryland, where he maintained his permanent residence, and in Philadelphia, where he was attending law school. The clerk of court entered a default the same day. The court then issued an order to show cause why the motion for default judgment should not be granted. Noble moved to set aside the entry of default, asserting he had not been personally served and therefore was not on legal notice of the court filings. Ali opposed the motion and requested Rule 11 sanctions against Noble and his counsel in the form of attorney's fees to cover the costs of repeated service attempts and of responding to Noble's motion to set aside default, asserting she had served Noble three times over a one-year period and characterizing his denial of service as "frivolous and unfounded." Pl.'s Resp. to [Noble's] Mot. to Lift Entry of Default, at 6, 8, *Ali v. Mid-Atl. Settlement Servs., Inc.*, C.A. No. 02-2271 (D.D.C. Oct. 12, 2004) (JA 75, 77). The court denied the motion to set aside default as "deficient" because it was "not accompanied by a verified answer as is required by Local Civil Rule 7(g)" and directed Noble, *inter alia*, to respond with supporting affidavits to Ali's claim that he had been served with the complaint and to her request for attorney's fees. Ali subsequently filed a formal motion for sanctions.

Following additional filings, the court issued a decision on January 6, 2006 granting the sanctions motion in part. The court concluded that Ali had indeed effected service on Noble three times—in November 2002, May 2003 and September 2003—and declared Noble's counsel "admonished for his role

---

[2]The other five counts against Tolbert and Noble allege common law fraud, civil conspiracy to defraud, aiding and abetting fraud, negligence and equitable rescission of the sale.

in Noble's failure to respond as required after Noble was served with the summons and complaint by making factual assertions that were not based on a reasonable inquiry or supported by the evidence, and by making fact-based legal arguments that were not based on a reasonable inquiry into the facts and not warranted by existing law." Mem. Op. & Order at 19-20, *Ali v. Mid-Atl. Settlement Servs., Inc.*, C.A. No. 02-2271 (D.D.C. Jan. 6, 2006) (JA 211-12).[3] The court denied the sanctions motion "in all other respects." *Id*. at 20 (JA 212). The court advised both Noble and his counsel, however, that "any further delays attributable in whole or in part to any continued baseless assertion that Noble was not served may result in the imposition of monetary sanctions" and that a judgment of default and an order for rescission of the sale would be entered unless Noble filed a verified answer by January 17, 2006. *Id*. at 19 (JA 211).

Ali moved for reconsideration of the denial of monetary sanctions, which the court granted on March 10, 2006. *Ali v. Mid-Atlantic*, 235 F.R.D. at 4. In its decision, the court imposed monetary sanctions on Noble personally, concluding that his conduct in evading process and failing to file a verified answer, even after seeking to set aside the entry of default, warranted Rule 11 sanctions. *Id*. Specifically, the court found that "Noble's attempts to evade service and his four-year delay in filing a required responsive pleading was willful and part of a sustained pattern over time that needlessly delayed the progress of this action and has caused unnecessary expense for Ali." *Id*. The court directed Ali "to submit proof of the fees and expenses incurred in twice serving Noble in Philadelphia and in the filings

---

[3]The court noted Ali's process servers served the complaint by hand on Noble's mother at his permanent home address on November 13, 2002, by hand on the concierge at his apartment in Philadelphia on May 13, 20003 and, after Noble moved to a new Philadelphia apartment, by placing the complaint under his door on September 23, 2003 as Noble directed him to do in a telephone conversation.

related to the entry of default and the motion for default judgment." *Id*.

Noble filed a motion to reconsider and vacate the sanctions, asserting that the sanctioned conduct was attributable to his then-counsel rather than to him. The court denied Noble's motion, stating:

> Noble was sanctioned because of what *he* did. He "played a cat and mouse game in order to evade the jurisdiction of the court." Mem. Op. at 6, Mar. 10, 2006. He "elected to ignore repeated summonses." *Id*. *His* "attempt to evade service was 'disingenuous.' " *Id*. *His* pattern of evasion "was willful, deliberate and sustained[.]" *Id*. at 7. Those immutable facts are independent of and unmitigated by how his lawyer decided to argue those facts or when his lawyer sought to remedy them.

Order, *Ali v. Mid-Atl. Settlement Servs., Inc.*, C.A. No. 02-2271 (D.D.C. June 2, 2006) (emphasis in original) (JA 330). After Ali's counsel filed proof of fees and expenses, as directed, the court issued a minute order directing Noble to pay Ali $25,230.[4]

On July 17, 2009, the district court granted summary judgment in favor of Tolbert and Noble on all six counts against them, concluding as to Count 1 that Tolbert was not a "merchant" subject to liability under the CPPA. Noble timely appealed the sanctions order and Ali timely appealed the summary judgment. We treat the two appeals separately.

---

[4]The court subsequently directed the sanctions be "payable to plaintiff's counsel, alone." Order, *Ali v. Mid-Atl. Settlement Servs., Inc.*, C.A. No. 02-2271 (D.D.C. June 15, 2007) (JA 349).

**II.**

### *A. Noble's Appeal: Rule 11 Sanctions*

"Sanctions for violation of Federal Rule of Civil Procedure 11(b) are reviewable for abuse of discretion." *Burns v. George Basilikas Trust*, 599 F.3d 673, 677 (D.C. Cir. 2010) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). We conclude that the sanction award against Noble cannot stand because it is not authorized by the language of Rule 11. *See Lucas v. Duncan*, 574 F.3d 772, 776-77 (D.C. Cir. 2010) (vacating Rule 11 sanction award because rationale for magistrate judge's sanction had "no basis in the text" of Rule 11 and "trial court 'necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law' " (quoting *Cooter & Gell*, 496 U.S. at 405)) (alterations in original).

By its terms, Rule 11 applies to "[r]epresentations to the Court" made in "presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper." Fed R. Civ. P. 11(b) (2006). In *Hilton Hotels Corp. v. Banov*, 899 F.2d 40 (D.C. Cir. 1990), we noted that six other circuits had concluded, applying the version of Rule 11 then in effect, the "emphasis on the need to perform a 'reasonable inquiry' before 'sign[ing]' a 'pleading, motion, or other paper' suggests that the rule authorizes sanctioning an attorney only for unreasonably *filing* such a submission." 899 F.2d at 44-45 (emphasis in original)' *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 (1991) ("Rule 11 . . . governs only papers filed with a court"). The current version of the Rule, promulgated in 1993, is at least as emphatic in its focus on "**Representations to the Court**" in "a pleading, written motion,

or other paper" that is "present[ed] to the court."[5] *See Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 37 n.5 (2d Cir. 1995) ("In the instant case, the district court found Rule 11 of the Federal Rules of Civil Procedure inapplicable because the misconduct it observed did not involve any pleading or paper submitted to the court. We find this aspect of the district court's decision unexceptionable.") (internal citation omitted). In this case, the court made clear that Noble's sanctionable conduct was not his representation in a document presented to the court but the *failure* to present a document—namely, a verified answer—in response both to the summons and complaint served

---

[5]Current Rule 11(c) authorizes the court to "impose an appropriate sanction on any attorney, law firm, or party" that it determines has violated Rule 11(b). Fed. R. Civ. P. 11(b)(1) (2010). Rule 11(b), titled "Representations to the Court," provides that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the presented paper meets specified standards in that (1) it is not "presented for any improper purpose," (2) its "claims, defenses, and other legal contentions" are warranted under the law (3) its "factual contentions" are at least likely to "have evidentiary support" and (4) its "denials of factual contentions" are reasonably warranted "on the evidence" or on "a lack of information." *Id*. 11(b)(1)-(4). The previous version authorized sanctions against a party or counsel for violating its directive that "[e]very pleading, motion, and other paper" be signed by counsel or by the party if unrepresented and that the signature "constitute[d] a certificate by the signer that the signer ha[d] read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it [wa]s well grounded in fact and [wa]s warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it [was] not interposed for any improper purpose." Fed. R. Civ. P. 11 (1990).

on Noble three times and to the motion for entry of default—in combination with the "cat and mouse game" Noble played to evade service. *See* 235 F.R.D. at 4. Because the sanctioned misconduct did not involve representations in a document presented to the court as required under Rule 11, we vacate the sanction award.

Notwithstanding Noble's conduct is not sanctionable under Rule 11, sanctions may nonetheless be warranted under the district court's inherent authority, which "enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995); *see generally Chambers*, 501 U.S. at 43-46 (describing extent of inherent judicial authority). Accordingly, we remand for the district court to consider whether to exercise its inherent authority to sanction Noble. To support a sanction under this authority, the court must make a finding by clear and convincing evidence that Noble committed sanctionable misconduct that is tantamount to bad faith. *Shepherd*, 62 F.3d at 1472 (clear and convincing evidence); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980) (bad faith).

### B. Ali's Appeal: District of Columbia Consumer Protection Procedures Act

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *Tate v. District of Columbia*, 627 F.3d 904, 908 (D.C. Cir. 2010). Summary judgment is appropriate " 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' " *Id.* (quoting Fed. R. Civ. P. 56(c)) (other internal quotation omitted). Applying this standard, we conclude the district court

properly granted summary judgment on Count 1 of the amended complaint, the only ruling Ali challenges on appeal. *See* Ali Br. 23-30.

Count 1 alleges that Tolbert, in "brokering the sale of 1010[ ]G Street," violated the CPPA by "ha[ving] Ms. Ali agree to sell 1010 G Street on unconscionable terms, in violation of subsection (r)" of D.C. Code § 28-3904—which makes it a violation of the CPPA "for any person to . . . make or enforce unconscionable terms or provisions of sales or leases"—and by doing so "with full knowledge of [Ali's] inability to negotiate a fair price for the sale of her property, or to avoid foreclosure by negotiations with her lender." Am. Compl. ¶¶ 44, 47, *Ali v. Mid-Atl. Settlement Servs., Inc.*, C.A. No. 02-2271 (D.D.C. Mar. 31, 2004) (JA 35-36). The district court granted summary judgment on Count 1 on the ground that "the pleadings and the evidence demonstrate there is no genuine issue of material fact as to whether Tolbert was a merchant under the [CPPA]" and he therefore cannot be held liable thereunder. *Ali v. Mid-Atl.*, 640 F. Supp. 2d at 7. The district court was correct.

"In answering questions involving the proper interpretation of D.C. statutes, this court relies on the construction of these laws by the D.C. Court of Appeals." *Poole v. Kelly*, 954 F.2d 760, 761 (D.C. Cir. 1992). The D.C. Court of Appeals has repeatedly concluded that the CPPA " 'was designed to police trade practices arising only out of consumer-merchant relationships.' " *Snowder v. District of Columbia*, 949 A.2d 590, 599 (D.C. 2008) (quoting *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. 1981)) (citing *Carleton v. Winter*, 901 A.2d 174, 179 (D.C. 2006); *DeBerry v. First Gov't Mortg. & Investors Corp.*, 743 A.2d 699, 701 (D.C.1999)). At the time of the sale of Ali's property, the CPPA defined "merchant" as a "person who does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who does or would supply the goods or services which are or

would be the subject matter of a trade practice." D.C. Code § 28-3901(a)(3) (2000). Ali has pointed to no evidence in the record even suggesting Tolbert supplied, or held himself out as a person who would supply, any goods or services to Ali in connection with her ownership or sale of the house. At most, Tolbert assisted Noble in purchasing the property, placing him on the "consume" rather than the supply side of the transaction. *See Howard*, 432 A.2d at 709 (merchant "must be a 'person' connected with the 'supply' side of a consumer transaction" (quoting Council of the District of Columbia, Comm. on Pub. Servs. & Consumer Affairs, Rep. on Bill 1-253, at 13 (Mar. 24, 1976)).[6]

Ali contends Tolbert's conduct was comparable to that of the defendant in *Byrd v. Jackson*, 902 A.2d 778 (D.C. 2006),

---

[6]In 2007, the District of Columbia City Council amended the definition of "merchant" by, *inter alia*, adding the qualification that a person supply goods or services "in the ordinary course of business." Nonprofit Organizations Oversight Improvement Amendment Act of 2007, § 2(a), 2007 D.C. Legis. Serv. (West). This requirement was not met here as Ali identified no evidence that Tolbert was in the "business" of brokering real estate transactions, refinancing mortgages, curing credit problems or any similar service. In fact, she acknowledged in district court that Tolbert's role at EZ Mortgage was as an "advertising consultant." Resp. to Tolbert Statement of Undisputed Facts ¶ 10, *Ali v. Mid-Atl. Settlement Servs., Inc.*, C.A. No. 02-2271 (D.D.C. Oct. 21, 2007) (JA 593). We will not apply the 2007 amendment retroactively, however, because there is "no indication that the Council intended [the change] to be retroactive." *Childs v. Purll*, 882 A.2d 227, 238 (D.C. 2005) (declining to apply retroactively 2000 CPPA amendment eliminating limit on jurisdiction of D.C. Department of Consumer and Regulatory Affairs (citing *Mayo v. District of Columbia Dep't of Employment Servs.*, 738 A.2d 807, 811 (D.C.1999) ("retrospective operation will not be given to a statute . . . unless such be the unequivocal and inflexible import of the terms") (ellipsis in *Childs*))) (bracketed alteration added).

who was found to be a "merchant" under the CPPA because he offered to assist a homeowner—the plaintiff's late grandmother—prevent foreclosure on her home. In *Byrd*, however, the court found "there was ample evidence supporting the judge's finding that [the defendant] had advertised himself to [the homeowner] as one who would help her avoid foreclosure, and that she dealt with him on that understanding": he had mailed the decedent a "notice advising her of the services offered" by his company, which typically promoted the company's staff as "foreclosure specialists" with "a number of creative programs" that had helped many homeowners keep their homes and would do the same for the recipient. 902 A.2d at 781. Ali has identified no such evidence in this record to support her claim that, "[a]s in the Byrd case, Mr. Tolbert offered his services to 'help' [Ali]." Ali Br. 28 (italics omitted in original). Because Ali "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the grant of summary judgment to Tolbert on Count 1 was appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).[7]

---

[7]In support of this claim, Ali cites only Noble's interrogatory response stating that, by advancing funds to stave off foreclosure pending his purchase of the property, he "believed that he was helping [Ali] minimize any damage to her financial records by her previous nonpayments, while also helping her secure a chance of home ownership in the future." Ali Br. 20 (citing Def. Noble's Third Supplemental Resps. to Pl.'s First Set of Interrogs. at 10, *Ali v. Mid-Atl. Settlement Servs., Inc.*, C.A. No. 02-2271 (D.D.C. Oct. 21, 2007) (Ex. G, Pl.'s Mem. in Resp. to Tolbert's Mot. for Summ. J.) (JA 639). This statement does nothing to satisfy Ali's burden to "designate 'specific facts showing that there is a genuine issue for trial' " as to whether *Tolbert* held himself out to Ali as a merchant—"an essential element of her case." *Celotex*, 477 U.S. at 323-24 (quoting Fed. R. Civ. P. 56(e)). Ali also claims Tolbert was a merchant because he "benefitted from the transaction by acquiring a beneficial interest in

For the foregoing reasons, we affirm the district court's grant of summary judgment on Count 1 of the amended complaint, vacate its Rule 11 sanction award and remand for the court to consider whether to impose sanctions under its inherent authority.

*So ordered.*

---

the Property." Ali Br. 29. Not only is this claim unsupported in the record, it is quite beside the point as the CPPA's definition of "merchant" makes no reference to whether a person derives a benefit from a challenged transaction. In any event, as noted earlier, Tolbert's participation in the purchase of Ali's house does not place him on the supply side of the transaction. *See Howard*, 432 A.2d at 709.